MURPHY OIL USA, INC., Plaintiff,

v.

BROOKS HAUSER d/b/a Brooks'
Foods, Inc., Defendant.

No. CV 3–92–791.

United States District Court,
D. Minnesota,
Third Division.

Feb. 17, 1993.

David L. Doyle, Pope & John, Chicago, IL, and Terese W. Wallschlaeger, Zelle & Larson, Minneapolis, MN, for plaintiff.

Joseph A. Thomson, Lindquist & Vennum, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter is before the Court on plaintiff Murphy Oil USA, Inc.'s ("Murphy Oil") Motion for Summary Judgment. Murphy Oil alleges breach of the Lease and Franchise Agreement and Sales Agreement with defendant Brooks Hauser ("Brooks") and seeks a declaratory judgment that Murphy was justified in terminating the franchise under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA" or "the Act") and the terms of the Lease and Franchise Agreement.

### Background

On January 25, 1991, Brooks purchased a Lease and Franchise Agreement for the Spur station located at 4311 Shoreline Drive, Spring Park, Minnesota from Terry and Bonita Labatt. The Labatts had previously entered into the Lease and Franchise Agreement with Murphy Oil for the operation of a gas station at that location, and a Sales Agreement for the purchase of petroleum products. The Labatts assigned the Lease

and Franchise Agreement to Brooks as part of the purchase agreement.[1]

The Lease and Assignment describe the premises which Murphy leased as "All of Lot 11 of Coronado Park, Lake Minnetonka ... except for that part being used for road purposes...." Lease and Assignment, Plaintiff's Exhs. A and C. During the time the Labatts leased the premises, Murphy also rented a portion of the building (900 square feet or approximately 24% of the building) on the lot to a retail drycleaning operation. In April, 1991, that portion was leased to Wet Spot, a watercraft rental business. Wet Spot paid $850.00 per month in rent directly to Murphy Oil. Murphy Oil, through Charles G. Clair, the area manager who dealt with Brooks, claims that Brooks never requested a reduction of his rent by virtue of Murphy Oil's separate leasing of the retail space. Clair Aff., ¶ 4. Brooks continued to make full rental payments through July of 1992.

In addition to rental payments, Murphy Oil also charged Brooks a monthly common area maintenance fee of $850.00 for services such as garbage collection, sewer and water fees, outside lighting, lawn maintenance, snowplowing and sweeping. This amount did not change when Wet Spot moved into the retail space on the premises leased by Brooks. Brooks claims he complained to Murphy Oil about the fact that the common area maintenance fees remained the same despite the presence of another tenant and that Murphy Oil never corrected the situation. Hauser Aff., ¶ 4.

The Lease and Franchise Agreement provides that the rental payment is $8,200.00 [2], payable on or before the first of each month. Lease and Franchise Agreement, Plaintiff's Exh. A. The Agreement incorporates the grounds for termination or nonrenewal listed in the PMPA (cited in full *infra*) and states that Murphy Oil

expressly reserves the right to repossess such premises after said termination or nonrenewal, and operate such premises through its employees or agents.

*Id.*

On September 22, 1992, Brooks gave Murphy Oil a check for $8,200.00 for September's rent, but the check was returned for insufficient funds. On October 13, 1992, Brooks gave Murphy Oil two checks, each in the amount of $8,200.00, to cover rent for August and October of 1992. Murphy Oil was subsequently notified by its bank that payment on both checks had been stopped.

By certified letter dated October 20, 1992, Murphy Oil notified Brooks that three months rental payments, totalling $24,600, were overdue, in violation of the provisions of the Lease and Franchise Agreement. Murphy Oil also stated that if payment was not made by October 27, 1992, Murphy Oil would be forced to terminate the Agreement. When Brooks failed to remit payment, Murphy Oil sent a second certified letter, notifying Brooks that Murphy Oil would terminate the Lease and Franchise Agreement and related Sales Agreement on January 29, 1993. As of December 1, 1992, Brooks had failed to make any rental payments for the months of August, September, October or November of that year.

On December 1, 1992, Murphy Oil sent Brooks a third certified letter, notifying Brooks that, in light of his failure to make any rental payments for August through November, amounting to a $32,800 deficiency, it intended to terminate the Lease and Franchise Agreement and related Sales Agreement on December 15, 1992. As of December 16, Brooks had neither made the required rental payments nor vacated the premises.

Murphy Oil also claims that Brooks owed Murphy Oil $8,576.42 for petroleum purchased from Murphy Oil in September 1992.

---

1. Although the Assignment does not specifically reference the Sales Agreement, Hauser has not argued that he is not a party to the Sales Agreement or bound by its provisions.

2. The first year the Labatts leased the premises, the rent was $7000 per month. The Lease and Franchise Agreement states that rent would increase to $7500 per month the second year, and $8,200 per month the third year. Brooks received assignment of the Lease and Franchise during the third year.

The Sales Agreement requires Brooks to pay $8,757.00 for each delivery of gasoline made by Murphy Oil to Brooks' gas station. However, on occasion, the amount delivered and pumped into the underground storage tanks was less than the number of gallons of petroleum products worth $8,757.00. Brooks claims, and Murphy Oil does not deny, that Murphy Oil generally credited his account with the overcharge amount.[3] Murphy Oil admits that after Brooks failed to pay for the September load·of gasoline, it began crediting any overcharge on subsequent, paid-for deliveries toward the payment of the September load. Seveland Aff., ¶ 4.[4] Therefore, it is not clear how much of the $8,757.00 claimed by Murphy Oil remains unpaid.

Murphy Oil commenced this action on December 2, 1992, seeking (a) a declaratory judgment that its termination of Brooks' Lease and Franchise Agreement was proper and lawful, and (b) an order requiring Brooks to relinquish possession of the leased premises. Murphy Oil also seeks recovery of the rental and gasoline payments it claims it is owed. Murphy Oil argues that Brooks's failure to make timely payments for rent and gasoline justifies its termination of the Lease and Franchise Agreement pursuant to both the Agreement itself and the PMPA, and that it has complied with the relevant notice provisions of the PMPA in terminating the Agreement.

In response, Brooks has asserted a counterclaim, charging Murphy Oil with breach of contract (Count I) insofar as Murphy Oil did not provide him with 100% of the space described in the lease; continued to charge Brooks the full amount for common maintenance after another tenant leased part of the premises; overcharged him for gasoline and failed to credit the overcharges to Brooks' account; and that the rental payment of $8,200.00 is unconscionable and not a "reasonable" term of the Lease and Franchise

Agreement within the meaning of the PMPA § 2802(b)(2)(A). Brooks requests damages for Count I of the Counterclaim. In Count II, Brooks seeks a determination that Murphy has failed to comply with the PMPA by overcharging Brooks for rent and common area charges, overcharging him for petroleum, attempting to terminate Brooks based on unreasonable provisions of its Lease and Franchise Agreement and Sales Agreement, and attempting to terminate Brooks upon insufficient notice and without providing an adequate opportunity to cure.

### Discussion

## I.  SUMMARY JUDGMENT STANDARD

The moving party is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of the court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *Agristor Leasing v. Farrow*, 826 F.2d 732, 733 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *Id.* at 734.

When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), the non-moving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that

---

**3.** Brooks Hauser describes the overcharges as resulting from Murphy's "refus[al] to follow its previous practice of crediting me each month for the difference between the cost of the fuel I purchased that month and the amount I paid for that fuel." Hauser Aff., ¶ 13.

**4.** In its Reply Memorandum, Murphy Oil states that it did recover the amount of the deficiency

created by the failure to pay for the September load of petroleum, but "continued to charge Hauser for petroleum products in excess of the amount of product delivered in an attempt to recover at least a *de minimis* amount of the overdue rental payments." Reply Memorandum, n. 1.

there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,[5] and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## II. PETROLEUM MARKETING PRACTICES ACT

■ The PMPA establishes federal standards governing the termination of petroleum franchise relationships and defines the rights and obligations of the franchisor and franchisee with respect to termination and nonrenewal. A franchisor may terminate any franchise if certain notification requirements are met and the termination is for a reason listed in the Act. 28 U.S.C. § 2802(b)(1). The PMPA contains an extensive list of grounds for termination or nonrenewal in subsections 2 and 3 of § 2802(b). Paragraphs A and C of subsection 2 are relevant to this case and provide as follows:

> For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:
>
> (A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—
>
> (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or
>
> (ii) not more than 60 days prior to the date on which notification of termination or non-

renewal is given, if less than 90 days of notification is given pursuant to section 2804(b)(1) of this title.

\* \* \* \* \* \*

> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—
>
> (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or
>
> (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days of notification is given pursuant to section 2804(b)(1) of this title.

Subsection (c) of this section defines "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" to include "failure of the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled." 15 U.S.C. § 2802(c)(8).

The PMPA sets out specific notification requirements which a franchisor must follow when terminating a franchise. Generally, a franchisor is required to give the franchisee 90 days written notice of the termination or nonrenewal setting out the reasons for the action and the effective date of the termination or nonrenewal. 15 U.S.C. § 2804(a), (c). However, in circumstances in which it would not be reasonable for the franchisor to give notice 90 days before the effective date of termination, the franchisor "shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of

---

5. The PMPA sets out the parties' respective burdens of proof in an enforcement action brought by the franchisee against a franchisor for failure to comply with the requirements of the Act:

> [T]he franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under ... [the Act].

15 U.S.C. § 2805(c).

**442**

such notification is reasonably practicable." 15 U.S.C. § 2804(b)(1)(A).

### III. COUNTS I AND II—BREACH OF THE LEASE AND FRANCHISE AGREEMENT AND SALES AGREEMENT

■ There is no dispute that Brooks failed to pay Murphy Oil, in a timely manner, the amounts due under the Lease and Franchise Agreement for rent. Murphy Oil has not received any payment for rent for the months of August through December 1992.[6] The failure to pay rent when due is a breach of a material provision of the Lease and Franchise Agreement. *See* Agreement, ¶ 12 ("The parties hereto consider all duties and obligations contained in any of the provisions of this Agreement to be of material significance to the relationship created hereby.").

Brooks argues that his "failure" to make rental payments for the months of August through December, 1992 is justified because Murphy Oil breached the agreement by leasing a portion of the premises leased to Brooks to another business without reducing the rent owed by Brooks. Brooks calculates the "proper" amount of rent to be $6,232.00 (76% of $8,200.00) beginning in April 1991, when approximately 24% of the premises was leased to Wet Spot. He claims that payment for August through December 1992 was not due because Murphy Oil should credit Brooks for 20 months of overcharged rent— from April 1991 to August 1992. Hauser Aff., ¶ 11.

■ Brooks' argument that he was excused from paying August through Decem-

ber rent because he has already paid an appropriate amount in rent will not withstand close scrutiny. First, Brooks continued to pay the full amount of rent specified in the Agreement. Because Brooks continued to recognize the contract after Murphy Oil's alleged breach, he has waived that breach. *Creative Communications Consultants, Inc. v. Gaylord,* 403 N.W.2d 654, 657 (Minn.Ct.App.1987) ("A party's continued recognized of a contract as binding after the other party's alleged breach acts as a waiver of that breach.").[7]

■ Second, Brooks' remedy when faced with Murphy Oil's alleged breach of the contract, assuming some degree of performance, was either rescission, a suit for damages or mutual modification through a renegotiation of the contract; a party is not excused from performance absent impossibility, death of a party, accord and satisfaction, novation or other similar occurrences. *See generally* Arthur L. Corbin, Corbin on Contracts, §§ 1228–67, 1276–86, 1293–97. If Brooks was not satisfied with amount of rent that he owed under the terms of the Lease and Franchise Agreement, his recourse was to renegotiate the Agreement's terms with Murphy Oil or rescind the entire contract. Brooks has cited no authority which, under the circumstances of this case, permits him to unilaterally cease making the payments set forth in the written agreement between the parties.

■ A court may not judicially modify the terms of a contract where the terms are not ambiguous. *See* Arthur L. Corbin, Corbin on Contracts, § 541.[8] *See also Corbin v. Texa-*

---

6. Hauser has submitted a copy of a check for $6,232.00, payable to Murphy Oil, which he claims is the rental payment for February 1993 in the amount he calculates to be due. The check is evidence that Hauser desires to modify the present Lease and Franchise Agreement to decrease the rent, but does not constitute any evidence of payment applicable to the Lease and Franchise Agreement.

7. Brooks claims that he complained to Murphy Oil about the alleged overcharge for common maintenance expenses, although he does not say that he complained about the failure to decrease the total rent. Even if he had complained, the fact that he continued to pay the full amount of

rent for 20 months constitutes "continued recognition of the contract."

8. *See also Continental Copper & Steel Industries v. Bloom,* 96 A.2d 758, 139 Conn. 700 (1953) (cited in the treatise) ("Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry. The simple inquiry is, what is the contract? and has the plaintiff performed his part of it?" (citation omitted)).

In the instant case, whether the rental amount was reasonable is not a question in determining whether Brooks' breached the Lease and Franchise Agreement.

*co, Inc.,* 690 F.2d 104, 105 (6th Cir.1982) (court of appeals reversed trial court's order reducing the franchisee's monthly rent payment, holding that § 2805 of the PMPA did not authorize the court to reduce the rent from that agreed to in the parties' contract). Furthermore, Minnesota law suggests that a tenant contesting the amount of rental payment may not withhold the entire amount of its rental payment for several months. *See Space Center, Inc. v. 451 Corporation,* 298 N.W.2d 443, 452 (Minn.1980) (tenant who withheld more than the amount it was entitled to withhold from landlord was liable for damages).

Brooks has failed to come forward with any specific facts or legal arguments which would support a legally cognizable defense to the admitted failure to make full payments under the Lease and Franchise Agreement. Summary judgment is appropriate on Count I, and Murphy Oil is entitled to rental payments from Brooks, in the amount specified in the Lease and Franchise Agreement, for the months of August, 1992 through December, 1992. Murphy Oil is further entitled to possession of the leased premises pursuant to the Lease and Franchise Agreement.

▇ As with the Lease and Franchise Agreement, there is no dispute that Brooks did not make payment for the petroleum products delivered by Murphy Oil in September 1992. This failure constitutes a breach of the Sales Agreement. However, Murphy Oil admits that it has recovered all, or substantially all, of the deficiency through overcharges on subsequent deliveries of petroleum products delivered to Brooks. Therefore, there is a factual question as to the amount, if any, due Murphy Oil for the September delivery, although there is no question that Brooks did breach the Sales Agreement by failing to pay. Although there are no genuine issues of material fact with respect to Brooks' breach of the Sales Agreement, Murphy Oil is not entitled to summary judgment on Count II at this stage of litigation because the amount owed under the contract is disputed.

## V. COUNT III—DECLARATORY JUDGMENT

▇ The Court finds no evidence that Murphy Oil did not comply with the notice provisions of the PMPA. There is no allegation that the content of the notification letters did not satisfy the statutory requirements. As to their timeliness, the 14 days notice of termination is not an unreasonable amount of time in light of the circumstances of the case. *See* 15 U.S.C. § 2804(b)(1)(A). Murphy Oil first gave Brooks the requisite 90 days notice in the letter dated October 29, 1992, when approximately $33,176.42 was due and owing. Within four weeks, that amount had increased to $41,376.42. In order to prevent further losses, Murphy Oil was justified in giving notice of effective termination only 14 days in advance. *See Loomis v. Gulf Oil Corp.,* 567 F.Supp. 591 (M.D.Fla.1984) (less than 90 days notice of termination was justified when franchisee developed a deficiency of $56,233.52 in 30 to 60 days).

▇ On the merits of the termination itself, there is no doubt that failure to make timely payments of all sums to which the franchisor is legally entitled is grounds for termination under the PMPA. 15 U.S.C. § 2802. If this fact is established, as it has been here, the court need not go beyond the plain language of the statute to determine if the termination was reasonable and the franchisor acted in good faith. *Hinkleman v. Shell Oil Co.,* 962 F.2d 372, 377 (4th Cir.1992) (court adopted position that "the statute provides grounds that are per se reasonable for terminating a franchise, provided notification requirements are met, rendering further inquiry into pretext unnecessary."); *Brach v. Amoco Oil Co.,* 677 F.2d 1213 (7th Cir.1982). In this case, it is undisputed that Brooks failed to pay the rental amount specified in the Lease and Franchise Agreement for the months of August through December 1992, and that he failed to pay the amount due for the petroleum products delivered in September 1992. Such failures to pay are grounds for termination under the PMPA. As discussed in the previous section, Brooks' argument that Murphy Oil is not legally entitled to the amount of rent set forth in the Lease and Franchise Agreement because it leased

part of the premises to Wet Spot do not excuse his failure to pay the amount due.

 Brooks also argues that $8,200 is an "unreasonable" term of the contract and is the result of a discriminatory application of Murphy Oil's rental formula in violation of the PMPA. Brooks claims he pays only $2,800 for a Union 76 gas station of comparable or smaller size in South Minneapolis. However, it is not for this Court to determine the objective reasonableness of Murphy Oil's choice to charge $8,200 rent. *See Lippo v. Mobil Oil Corp.*, 802 F.2d 975, 979 (7th Cir.1986) ("We cannot second-guess the business decision of a franchisor to force a dealer to lower its prices...."). *See also Palmieri v. Mobil Oil Corp.*, 529 F.Supp. 506, 511 (D.Conn.1982), *aff'd per curiam*, 682 F.2d 295 (2d Cir.1982) ("[T]he legislative history of the PMPA suggest quite clearly that § 102(b) of the PMPA [15 U.S.C. § 2802] was intended by Congress to protect franchisees *only* in situations where the franchisor acts with evil motive or discriminates selectively against franchisees with the intent to terminate or to nonrenew the franchise." (emphasis in original)).

In this case, Brooks has failed to present sufficient evidence to demonstrate that Murphy Oil charged $8,200 a month in rent with the intent to force Brooks out of business. In fact, Murphy Oil charged, and Brooks paid, this amount for over a year and a half before Murphy ceased making any payments under the Lease and Franchise Agreement. Absent evidence of discriminatory intent, Murphy Oil's rental charge is considered reasonable, and Murphy Oil is entitled to enforce this term of the Lease and Franchise Agreement. The Court concludes that the termination of Brooks' franchise complied with the PMPA in all respects, and Murphy Oil is entitled to repossess the gas station pursuant to the Lease and Franchise Agreement.

### Order

Based on the files, records, and proceedings herein, including arguments of counsel, **IT IS ORDERED** that

1. Plaintiff Murphy Oil's Motion for Summary Judgment (Doc. No. 13) is **GRANTED** with respect to Counts I and III, and is DENIED with respect to Count II (on the issue of damages only);

2. Murphy Oil is entitled to rental payments from Brooks, as specified in the Lease and Franchise Agreement, for the months of August, 1992 through December, 1992; Murphy Oil is further entitled to possession of the leased premises.