**STATE OIL COMPANY, an Illinois corporation, Plaintiff,**

v.

**Emad ALAYOUBI d/b/a A & A Quick Mart, Inc., Defendant.**

No. 95 C 5522.

United States District Court, N.D. Illinois. Eastern Division.

May 19, 1997.

---

**654**

Mitchell M. Iseberg, Chicago, IL, for State Oil Co., S & S Petroleum Products, Bill Anest, Peter Anest.

Daniel Kevin Sinclair, Gurnee, IL, for Emad Alayoubi.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff State Oil Company, Inc., an Illinois corporation, brought this action under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq., against Emad Alayoubi, doing business as A & A Quick Mart, Inc. State Oil seeks a declaratory judgment that its termination of its franchise with Alayoubi at the end of Alayoubi's second three-year lease was in compliance with the PMPA. State Oil also seeks an order of possession.

In late 1994, State Oil sent Alayoubi a notice pursuant to 15 U.S.C. § 2804, informing Alayoubi, pursuant to 15 U.S.C. § 2802(b)(3)(D)(iii), that he could renew his franchise lease only on terms offered by a proposed lessee, Clark Oil Company. When, after protracted negotiations and the expiration of Alayoubi's lease on August 31, 1995, an agreement had not been reached for renewal on the Clark Oil terms, and Alayoubi refused to vacate the premises, State Oil sued. At some point before this case went to trial Clark Oil decided not to continue to pursue the lease on the Alayoubi property. State Oil, after various negotiations, instead found a buyer for the Alayoubi property in Zion, Illinois, as well as five other properties. State Oil served another notice on Alayoubi, giving him his statutory right of first refusal. Alayoubi declined, arguing that the offer did not comply with the requirement under the PMPA that the offer be a bona fide offer to purchase. State Oil therefore filed an amended complaint with respect to this offer, and the case went to trial.[1] This court has subject matter jurisdiction pursuant to 28

---

1. At trial State Oil presented evidence with respect to the Clark Oil transaction as well, on the ground that the notice of the subsequent transaction, taken alone, might not meet the statutory requirements. Alayoubi does not contest the adequacy of the notice, however, and I conclude that it is adequate considering the history of the negotiations and this lawsuit. *See* 15 U.S.C. § 2804(b)(1)(A). Since the Clark Oil transaction had otherwise become moot by the time of trial, I have made no findings as to whether the proposed lease was a bona fide offer as that terms is used in cases interpreting the PMPA.

U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391. This opinion constitutes my findings of fact and conclusions of law.

The agreement to sell which forms the heart of the current disagreement between the parties was signed on October 15, 1996 between Bill Anest and Peter Anest, doing business as Petroleum Products, which leased the Alayoubi and various other properties to State Oil (of which they are the two stockholders), and Country Pantry, Inc. Country Pantry was, like Alayoubi, a lessee (under the PMPA, a "franchisee"), of property from State Oil. Country Pantry at the time of the October 15, 1996 agreement, held three leases and had previously leased five properties from State Oil. Like Alayoubi, it had been served with a right of first refusal, or alternatively, a notice that its lease would not be renewed, as a result of the Clark Oil proposal. Country Pantry exercised its right to match the terms of the Clark Oil proposal with respect to certain of its leases, and gave up two others. Before documents could be signed it began negotiating to buy the leased properties rather than lease them. State Oil insisted that it would only sell if Country Pantry bought all six of its properties that it had not leased to Clark Oil. Country Pantry had been in business a number of years (it owns or leases other similar properties besides those at issue here and having no connection to State Oil) but it needed a partner to put up the downpayment. It found one in Shell Oil. A price was agreed upon of $8,500,-000.00, of which $1,200,000.00 was allocated to the Alayoubi property. Accordingly, Alayoubi was given a right of first refusal to purchase the property that he leased for $1,200,000.00.

■ At trial, two experts for Alayoubi testified that a fair price for the property would be hundreds of thousands of dollars less than the price allocated by the Country Pantry contract. Alayoubi therefore argues that the offer is not bona fide. Having heard the evidence, however, I conclude that whether the price is wise or not (not my concern) it was arrived at in an arm's-length negotiation, and is the actual price that Country Pantry is willing to pay. Indeed, Country Pantry has closed on the remainder of the contract. The contract stated that if, as a result of this lawsuit, State Oil could not close on the Alayoubi property, Country Pantry would purchase the remaining properties and the prices allocated for each of them. The contract allows a later closing on the Alayoubi property if permitted as a result of this suit. The fact that State Oil was obligated to close (and did) on the remaining properties whether or not it was able to deliver the Alayoubi property to Country Pantry undercuts any suspicion that more of the purchase price might be allocated to the Alayoubi property than to the remaining property. While a higher allocation would make it less likely that Alayoubi would match the terms of the other offer (though in fact State Oil would probably be just as happy to have Alayoubi buy the property as Country Pantry), a failure to close on the Alayoubi property in such circumstances could leave State Oil with the short end of its bargain. In addition, I found the testimony of John Caviness, one of the owners of Country Pantry, credible with respect to his experience and his method of pricing the Alayoubi property as well as the other properties purchased in the State Oil/Country Pantry sale.

■ Alayoubi has two additional arguments. First, he says, the Country Pantry price for his property obviously included goodwill, which State Oil could not sell because he already owned it. However, I have reviewed the lease documents and conclude otherwise. Neither do the cases relied on by Alayoubi, including especially *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir.1982), support his theory. As *Brach* recognized, Congress in enacting the PMPA was concerned about the gasoline franchisor's ability to appropriate goodwill built up over years by a hard-working franchisee. But that is the reason the franchisor must satisfy the requirements of the PMPA before terminating a franchisee. Once those requirements are met, the Act does not prevent termination.

Alayoubi's second contention is that Country Pantry was not an arm's-length buyer because the price it was willing to pay must have been influenced by its desire to keep control of three properties that it would oth-

erwise lose to State Oil or the fact that it gave up two additional properties pursuant to the Clark Oil transaction. I find no evidence to support Alayoubi's contention. Alayoubi relies on language in *Slatky v. Amoco Oil Co.*, 830 F.2d 476, 484 (3d Cir.1987). But in this case the relationship of the Country Pantry owners to the properties—as indicated, they own multiple properties—is not the sort of personal relationship that would encourage them to negotiate out of emotion rather than at arm's length. The price for the six properties as well indicates that it is unlikely they would have let something other than their business judgment dictate price. At any rate, I have concluded that the evidence shows the transaction was one of arm's length.

■ I conclude that State Oil has complied with the provisions of 15 U.S.C. § 2802(b)(3)(A) in this case. As other courts have noted, the result may be harsh in terms of Alayoubi's desire to continue in business at the location where for a number of years he has worked and built his business. The PMPA was enacted to prevent unfair practices. It does not, however, prevent all harsh results, and indeed, in this case, the opposite result would have harsh economic consequences for State Oil. Since State Oil has complied with the PMPA, it is entitled to a declaratory judgment and to an order of immediate possession.

■ State Oil also seeks a judgment for the reasonable use and occupancy of the property since the expiration of Alayoubi's lease. Alayoubi has continued to pay his former rent of $5,000 a month during the pendency of this action. State Oil says it should be paid $3,000 a month in addition, which is the amount it would have been paid under the Clark Oil lease. But the Clark Oil lease did not require Clark Oil to purchase gasoline products from State Oil. Furthermore, Clark Oil withdrew its proposal. Other evidence before me indicates that the rental being paid by Alayoubi (i.e., a comparison with rentals on other State Oil leases prior to the Clark Oil transaction as well as Alayoubi's expert testimony) is a fair rental. State Oil produced no testimony to counter Alayoubi's expert. Accordingly, I conclude

that State Oil has failed to carry its burden of proof that the fair rental during the intervening period is $8,000.00 a month (State Oil did not attempt to prove any lesser figure).