**ESSO STANDARD OIL COMPANY**
**(Puerto Rico), Plaintiff**

v.

**Jose H. Monroig ZAYAS d/b/a Monroig Service Station, Defendant.**

**Civil No. 04–1711(SEC).**

United States District Court,
D. Puerto Rico.

Jan. 12, 2005.

**166**

Angel E. Rotger–Sabat, Hato Rey, PR, for Plaintiff.

Victor P. Miranda–Corrada, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Plaintiff Esso Standard Oil Company's (hereinafter "Plaintiff" or "Esso") request for declaratory judgment (Docket # 1) and Defendant Jose H. Monroig Zayas's ("Defendant" or "Monroig") request for dismissal of Plaintiff's action and for preliminary injunctive relief (Dockets # # 14 & 33). After careful scrutiny of the parties' filings and the applicable law, we find that Monroig's request for dismissal for lack of subject matter jurisdiction should be **DENIED,** Esso's request for declaratory judgment should be **HELD IN ABEYANCE** pending conclusion of discovery and jury trial, and that Monroig's request for preliminary injunctive relief should also be **DENIED.**

### Factual Background[1]

In January of 1996 Monroig started as an Esso retail dealer, entering into a lease/franchise agreement for the operation of a gasoline service station in an Esso owned parcel located at 65th Infantry Avenue, Km. 12.6, Cohen Industrial Park, Carolina, Puerto Rico. Subsequently, on December 7, 2000 Esso and Monroig executed a new franchise agreement for the continued operation of the retail fuel service station. The term of said contract was three (3) years, starting on January 1, 2001 and expiring on January 1, 2004. The monthly rent under said contract was $3,831.00. On July 11, 2003 Esso sent a draft of the new contract that would govern the commercial franchise relationship with Monroig starting on January 1, 2004. The monthly rent set in the draft was increased to $4,035.00 for the first year and $4,235.00 for the second and third year. This new contract was never executed nor were the parties able to reach an alternate agreement. Instead, on September 30, 2004, Esso sent Monroig a notice of non-renewal informing Monroig that the franchise relationship would be terminated effective January 1, 2004 for the parties' failure to agree on changes or additions to the franchise. Nonetheless, Esso extended the termination deadline on five occasions. The fifth and final extension expired June 30, 2004 with no contract signed for the renewal of the franchise relationship. Accordingly, on July 1, 2004, Esso stopped delivering gasoline to the station.

### Procedural Background

Prior to this action, on July 2, 2004 Esso had also filed a summary eviction action in the local courts, Civil No. FPE 2004–0193(408). The local court scheduled an eviction hearing for August 30, 2004. Then, on July 14, 2004, Esso filed the instant action against Monroig seeking judgment declaring that the lease agreement and franchise relationship between Esso and Monroig expired due to a legal non-renewal under the Petroleum Market-

---

1. The facts contained herein were taken from the complaint (Docket # 1), the answer to the complaint and counterclaim (Docket # 11), testimony at the evidentiary hearing and the exhibits thereto (Dockets # # 28–29), and Esso's brief for declaratory judgment (Docket # 32).

ing Practices Act ("PMPA"), 15 U.S.C. § 2802(b)(3)(A). Subsequently, Monroig sought removal of the state proceedings against him. On July 21, 2004 he filed a notice of removal and the case was assigned to Chief Judge José A. Fusté, Case No. 04–1718(JAF). Esso then sought consolidation of the two federal cases and Chief Judge Fusté granted consolidation pending the undesigned's approval (Docket # 4, Civil No. 04–1718(JAF)). In the interim, Monroig answered the removed complaint and filed a counterclaim against Esso seeking damages for alleged violations to the provisions of the PMPA and local laws (Docket # 6, Civil No. 04–1718(JAF)). Monroig also separately requested a preliminary injunction pursuant to the PMPA, 15 U.S.C. § 2805 (Docket # 7, Civil No. 04–1718(JAF)).

Cognizant that the removed case did not arise under federal law, the undersigned denied consolidation and ordered that the case be returned to Chief Judge Fusté's docket (Docket # 11, Civil No. 04–1718(JAF)). Subsequently, Chief Judge Fusté remanded the case (Docket # 12, Civil No. 04–1718(JAF)). Faced with the remand order, Monroig repeated his filings in the declaratory judgment action before the undersigned (Dockets # # 11 & 14, Civil No. 04–1711(SEC)).

On October 8 and 12 of 2004 the Court held a hearing encompassing Plaintiff's declaratory judgment claim and Defendant's motion for a preliminary injunction [2] (Dockets # # 26 & 27). At the conclusion of said hearing, the Court ordered the parties to simultaneously brief their respective positions. The parties complied (Dockets # # 32 & 33). Given that Defendant's brief challenged this Court's subject matter jurisdiction for the first time, the Court ordered Plaintiff to respond to Defendant's brief (Docket # 38). Plaintiff complied (Docket # 39), Defendant objected (Docket # 40), and Plaintiff replied (Docket # 41). Given its end-all nature, we will first address Defendant's contention that the Court lacks subject matter jurisdiction to hear Plaintiff's declaratory judgment action.

**Applicable Law and Analysis**

**I. Subject Matter Jurisdiction**

Federal courts "are not at liberty to overlook limitations on their subject matter," *Francis v. Goodman,* 81 F.3d 5, 9 (1st Cir.1996), but rather are required to strictly construe those statutes which grant their jurisdiction. *Garcia–Perez v. Santaella* 208 F.Supp.2d 200, 203 (D.P.R. 2002). *See Alicea–Rivera v. SIMED,* 12 F.Supp.2d 243, 245 (D.P.R.1998). "A challenge to federal subject matter jurisdiction may be raised at any time, including for the first time on appeal." *Halleran v. Hoffman,* 966 F.2d 45, 47 (1st Cir.1992). Therefore, we address Defendant's jurisdictional challenge despite his conspicuous timing.[3]

Esso filed the instant action pursuant to the federal question subject matter jurisdiction statute, 28 U.S.C. § 1331. In determining whether a claim "aris[es] under the Constitution, laws, or treaties of the United States" for purposes of federal question jurisdiction, the Court must look solely to the plaintiff's complaint. 28 U.S.C. § 1331; *Franchise Tax Bd. v. Const. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)("Congress has given the lower federal courts jurisdiction to hear ... only those cases in which a well-pleaded complaint establishes either that federal law

2. This procedure had been determined at an earlier status conference. *See* Docket # 23.

3. Noticeably, in his answer to the complaint, Defendant admitted that this Court had subject matter jurisdiction over Plaintiff's declaratory judgment action (Docket # 11, ¶ 1).

creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").

▬ The crux of Defendant's challenge is that Plaintiff's complaint refers to Section 2802(b)(3)(A) of the PMPA which establishes the valid basis for nonrenewal of a franchise. Notwithstanding said subsection, the enforcement provisions of the PMPA expressly states that "[i]f a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the *franchisee* may maintain a civil action against such franchisor." 15 U.S.C. § 2805(a)(emphasis added). The PMPA does not contain a separate provision for suits by the franchisor against the franchisee. The fact that this action was filed pursuant to the Declaratory Judgment Act, does not confer jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

▬ The First Circuit has not addressed the question of whether district courts have federal question jurisdiction over suits filed by franchisors against franchisees. A review of the existing case law reveals a myriad of reactions by both cir-cuit and district courts. Some courts have upheld jurisdiction noting the lack of an enforcement provision on behalf of the franchisor,[4] others have held that they have jurisdiction over the franchisor's declaratory judgment action without substantiating said finding,[5] and other courts have found that they lacked jurisdiction after carefully reviewing the franchisor's claims.[6] We find that the instant action is distinguishable from the latter in that the present action is governed exclusively by federal law, to wit, the PMPA. More pressingly as explained below, had the declaratory judgment defendant brought suit—which he has in this case—said suit would necessarily present a federal question.

In *Franchise Tax Board*, the Supreme Court of the United States noted that in an action for declaratory judgment, "it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Id.* at 17, 103 S.Ct. 2841. The Supreme Court further recognized that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal

---

4. See e.g., *Marathon Petroleum Co. v. Pendleton*, 689 F.Supp. 739 (N.D.Ohio 1988)("It also appears that a franchisor may bring an action against the franchisee to terminate the franchise agreement notwithstanding any express provision for an action by the franchisor against the franchisee under the PMPA."), *aff'd* 889 F.2d 1509 (6th Cir.1989); *Shell Oil Co. v. Altnia Associates*, 866 F.Supp. 536 (M.D.Fla.1994)("Despite PMPA's failure to specifically authorize equitable relief on behalf of franchisor, courts have consistently found that federal courts have jurisdiction to resolve disputes on behalf of the franchisor.").

5. See, e.g., *Mobil Oil Corp. v. Karbowski*, 879 F.2d 1052 (2d Cir.1989); *Chevron U.S.A., Inc. v. Finn*, 851 F.2d 1227 (9th Cir.1988); *State Oil Co. v. Alayoubi*, 966 F.Supp. 653 (N.D.Ill.

1997); *Murphy Oil USA, Inc. v. Brooks Hauser*, 820 F.Supp. 437 (D.Minn.1993); *Shell Oil Co. v. Farmer Serv. Station, Inc.*, 739 F.Supp. 749 (E.D.N.Y.1990); *Mobil Oil Corp. v. Shah*, 671 F.Supp. 503 (N.D.Ill.1987); *Amoco Oil Co. v. D.Z. Enters., Inc.*, 607 F.Supp. 595 (E.D.N.Y.1985); *Mobil Oil Corp. v. Vachon*, 580 F.Supp. 153 (D.Mass.1983); *Shell Oil Co. v. Kozub*, 574 F.Supp. 114 (N.D.Ohio 1983); *Exxon Corp. v. Miro*, 555 F.Supp. 234 (C.D.Cal.1983); *Crown Cent. Petroleum Corp. v. Waldman*, 515 F.Supp. 477 (M.D.Pa.1981).

6. See, e.g., *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 220 (4th Cir.2001); *State Oil Co. v. Khan*, 839 F.Supp. 543 (N.D.Ill. 1993); *CIA Petrolera Caribe v. De Jesus*, 671 F.Supp. 884 (D.P.R.1987).

question."[7] *Id.* at 19, 103 S.Ct. 2841. The First Circuit has followed this logic,[8] assuming jurisdiction pursuant to 28 U.S.C. § 1331 over a declaratory action brought by an employer under ERISA based on the federal nature of the underlying controversy. *Am. Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111 (1st Cir.1998). Inclusive, the district court of Oregon followed this approach in a declaratory judgment action by a franchisor under the PMPA over the franchisee's challenge that it lacked subject matter jurisdiction. *Texaco Ref. & Mktg., Inc. v. Davis*, 835 F.Supp. 1223, 1231 (D.Or.1993). We find this approach to be better reasoned and, in fact, binding.

In the instant case, the anticipated claim arises under federal law. This is undisputed. The declaratory judgment defendant, Monroig, has counterclaimed alleging violations to the PMPA. Thus, we feel compelled to follow the language in *Franchise Tax* and assume jurisdiction. In so doing, we necessarily deviate from existing case law holding the contrary. However, we highlight that although some courts have held that they lack subject matter jurisdiction over the franchisor's action against the franchisee, those cases are crucially distinct from the present action. In *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 220 (4th Cir.2001), a case relied on by Defendant, the Fourth Circuit held that it lacked subject matter jurisdiction over the franchisor's action, noting that the franchisor's action was in actuality a creature of state law. In fact, this point was recognized in both the opinion and the concurrence. *Id.* at 221–23. The same is true for the other case cited by Defendant, *CIA Petrolera Caribe v. De Jesus*, 671 F.Supp. 884 (D.P.R.1987). Although the Court concluded that the franchisor's declaratory judgment action did not arise under federal law, it expressly found that the issue before it did not require construction of the PMPA. *Id.* at 886. Accordingly, we find these two cases distinguishable. Having determined that we have jurisdiction, we now consider Defendant's second objection to the issuance of declaratory judgment.

## II. Seventh Amendment Right to Jury Trial

Next, Defendant alleges that the Court cannot enter declaratory judgment in

7. The same was cited approvingly by the Supreme Court in *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Automobile, Aerospace & Agricultural Implement Workers of Am.*, 523 U.S. 653, 660 n. 4, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998). Monroig makes much of the Supreme Court's mention in *Textron* that "[n]o decision of this Court has squarely confronted and explicitly upheld federal-question jurisdiction on the basis of the anticipated claim against which the declaratory-judgment plaintiff presents a *nonfederal* defense." *Id.* at 660, 118 S.Ct. 1626 (emphasis added). However, that is not the present situation. Esso's defense emerges strictly from the provisions of the PMPA and hence is exclusively of a federal nature.

8. Other circuits have similarly followed *Franchise Tax. See e.g., Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir.1997)("A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own right there."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir.1996)("Because [the defendant] could have brought a federal Lanham Act claim as part of a well-pleaded complaint against [the plaintiff], the district court had federal question jurisdiction over this declaratory judgment action."); *GNB Battery Techs., Inc. v. Gould*, 65 F.3d 615, 619 (7th Cir.1995)("In declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant."). These cases have previously been followed in this district. *See Metro. Life Ins. Co. v. Colon-Rivera*, 204 F.Supp.2d 273 (D.P.R.2002).

Plaintiff's favor because doing so would deprive him of his constitutional right to a trial by jury (Docket # 33). Once again, this challenge was raised for the first time in Defendant's brief. Defendant alleges that he asserted his right to a jury trial in his answer to the complaint and that he did not waive this right.

█ Rule 57 of the Federal Rules of Civil Procedure states that "the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39." Fed.R.Civ.P. 57. Rule 38 in turn provides that "the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed.R.Civ.P. 38. As is pellucidly clear from these rules, the equitable nature of a declaratory judgment action does not deprive a party of its right to a trial by jury.[9] *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)(The Declaratory Judgment Act, "while allowing prospective defendants to sue to establish their nonliability, specifically preserves the right to jury trial for both parties.").

In addition, Defendant's counsel avers that he did not have adequate time to prepare for the evidentiary hearing[10] and that he had not had the opportunity to conduct discovery. Given these allegations and the fact that Defendant has not expressly waived his right to a jury trial, the Court will not render a judgment regarding Plaintiff's declaratory judgment claim.

Instead, the Court will grant the parties sixty (60) days to conduct discovery and until March 30, 2005 to file a Joint Pretrial Order.

### III.  Preliminary Injunction

The PMPA provides that:

Except as provided in paragraph (3), in any action under subsection (a), the court shall grant a preliminary injunction if—

(A) the franchisee shows—

  (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

  (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2).

In its opposition to the preliminary injunction, Esso asserts that the Court need not exercise its equity powers since Monroig commenced his action more than ninety (90) days after the date on which notification pursuant to 15 U.S.C. § 2804(a) was delivered. In support of this contention,

9. There is no language in the PMPA establishing the right to a jury trial. The enforcement provisions of the PMPA set out the equitable remedies and determinations to be made by the court. *See* 15 U.S.C. § 2805(d)(1)(c), 2805(b)(1) & 2805(d)(2). They further specify that exemplary damages are to be determined by the court and not by a jury. However, they are silent as to actual damages. Nonetheless, some courts have granted jury trials in PMPA cases. *See Thompson v. Kerr–McGee Ref. Corp.,* 660 F.2d 1380 (10th Cir.1981)(holding that the franchisee has a right to a jury trial for actual damages, upon demand, on his claim under the PMPA).

10. However, at the hearing, Defendant's counsel stated for the record, without any qualification, that he was ready to proceed (Docket # 28, p. 2).

Esso cites to § 2805(b)(4) which states that "the court need not exercise its equity powers to compel continuation or renewal of the franchise relationship if such action was commenced [ ] more than 90 days after the date on which notification pursuant to section 2804(a) of this title was posted or personally delivered to the franchisee." 15 U.S.C. § 2805(b)(4)(A).

Monroig does not allege that he was not notified nor that the notice was somehow defective,[11] he does allege that Esso sent it in an attempt to pressure him to agree to new terms, to wit, an increase in rent. The notice was sent September 30, 2003. Therefore, the limitations period had elapsed by the time Monroig filed his request for preliminary injunctive relief on September 10, 2004.[12]

There is not much jurisprudence with respect to the discretion granted by § 2805(b)(4). A few courts have held that the franchisee's failure to adhere to § 2805(b)(4)'s limitations period entitled the franchisor to outright dismissal of the franchisee's claim for equitable relief. *Daras v. Star Enterprise*, Civ. A. No. 91–480, 1992 WL 345664, 1992 U.S. Dist. LEXIS 17831 (D.Md. Nov. 12, 1992); *Brach v. Amoco Oil Corp.*, 1980 U.S. Dist. LEXIS 9563, No. 80 C 4197 (N.D.Ill.1980). Several courts have relied at least in part upon the franchisee's failure to timely commence an action in denying equitable relief. *See N.I. Petroleum Ventures Corp. v. GLeS, Inc.*, 333 F.Supp.2d 251, 264 (D.Del. 2004); *Grotemeyer v. Lake Shore Petro Corp.*, 749 F.Supp. 883, 886 (N.D.Ill.1990);

*Cantrell v. Exxon Co., U.S.A.*, 574 F.Supp. 313, 318 (M.D.Tenn.1983); *Kesselman v. Gulf Oil Corp.*, 479 F.Supp. 800, 804 (E.D.Pa.1979), *aff'd*, 624 F.2d 1090 (3rd Cir.1980) (Table); *Walters v. Chevron U.S.A., Inc.*, 476 F.Supp. 353, 357 (N.D.Ga. 1979), *aff'd*, 615 F.2d 1135 (5th Cir.1980) (per curiam).

■ In addressing a franchisee's request for preliminary injunction after § 2805(b)(4)'s limitations period, some district courts have held that such delay precludes franchisees from benefiting from the liberal preliminary injunction standards of the PMPA. *See Grotemeyer*, 749 F.Supp. at 889; *Wesley v. Mobil Oil Corp.*, 513 F.Supp. 227, 231 (E.D.Pa.1981). These courts have continued to adjudge the request under common law standard. We find this to be the better reasoned approach. Accordingly, we proceed to examine Monroig's request for preliminary injunction under the common law standard.

Pursuant to the First Circuit standard for the issuance of preliminary injunctions, Monroig must prove: (1) "a substantial likelihood of success on the merits"; (2) "a significant risk of irreparable harm if the injunction is withheld"; (3) "a favorable balance of hardships"; and (4) "a fit (or at least, a lack of friction) between the injunction and the public interest." *Equal Employment Opportunity Comm'n v. Astra USA, Inc.*, 94 F.3d 738, 743 (1st Cir.1996) (citations omitted).

11. A challenge on the validity of the "grounds" for nonrenewal is distinct from the requirement that the notice provide sufficient "reason" for nonrenewal. *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1226 (7th Cir. 1990)("the PMPA requires only that the franchisor articulate with sufficient particularity the basis for the decision not to renew so that the franchisee can determine his rights under the Act"). Esso's notice sufficiently articulat-

ed the reasons for nonrenewal, to wit, failure to agree on changes or additions to franchise (Plaintiff's Exhibit 4).

12. The limitations period had also expired by August 11, 2004, the date Monroig requested a preliminary injunction in Civil No. 04–1718(JAF)(Docket # 7). Furthermore, were the 180 day term in § 2805(b)(4)(B) to apply, said term has similarly expired.

■ After a review of the parties' filings and based on the evidence presented during the two-day hearing on this matter, we find that Monroig cannot meet the first prong of substantial likelihood of success on the merits. We reach this conclusion in accordance with the defenses available to franchisors under the PMPA. Specifically, Section 2802(b)(3)(A) of the PMPA establishes as grounds for non-renewal of a franchise relationship "the failure of the franchisor and the franchisee to agree to changes or additions to the provisions of a franchise" conditioned that:

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor or otherwise preventing the renewal of the franchise relationship.

15 U.S.C. § 2802(b)(3)(A)(i)-(ii).

At the hearing, Esso presented the testimony of Mrs. Eileen Georgina Díaz Mercado, retail site area manager for Esso Standard Oil Company. According to her testimony, there were two major areas of change in the new franchise agreement: (1) rent increase and (2) the elimination of certain businesses in the parcel. Mrs. Díaz testified that Esso was entitled to the rent increase due to capital investments and equipment added to the parcel (Docket # 28, pp. 14–15). Since these changes were not acceptable to Monroig, Esso made some concessions on both regards.[13] These still were not acceptable to Mon-

roig. In all, Esso demonstrated willingness to negotiate for almost one year and extended Monroig's contract on five occasions to enable negotiations. Furthermore, Mrs. Díaz's testimony revealed that it was Monroig who spurned Esso's efforts to reach an agreement by not attending meetings and responding tardily to correspondence. *See* Plaintiff's Exhibits 7 & 21.

■ Monroig challenges Esso's good faith in the negotiations process as well as with respect to the rent increase. However, the First Circuit has clarified that the test for good faith under § 2802(b)(3) is "whether the franchisor had acted in subjective 'good faith' in requesting the changes, and not whether the demanded changes were the result of 'reasonable business judgments' on the part of the franchisor." *Esso Standard Oil Co. v. Dept. of Consumer Affairs*, 793 F.2d 431, 432 (1st Cir.1986). Moreover, the First Circuit explained that since the good faith requirement

requires merely that a franchisor not act "with evil motive or discriminate[ ] selectively against franchisees," courts have upheld franchisor demands for rent increases ranging from 100% to 300% when those demands were made in accord with established rental formulas applied to all franchisees and not for the purpose of selectively terminating a particular franchisee.

*Id.* (citations omitted). At this juncture and for purposes of the preliminary injunction, we find that Esso acted with the requisite good faith throughout its dealings with Monroig.

At the hearing, Esso presented testimony and documents justifying the rent in-

---

**13.** According to the last proposal submitted by Esso, Monroig would be able to keep all but one of the businesses on the premises and the rent would remain the same during the first year of the contract ($3,831.00), increase slightly the second year ($4,000.00), and reach its highest level the third year ($4,235.00)(Plaintiff's Exhibit 18).

crease as well as their insistence that Monroig eliminate the radiator shop—a business for which Esso had expressly denied permission and Monroig nonetheless operated despite Esso's instructions to cease and desist (Plaintiff's Exhibits 10 & 12). In addition, the contract between Esso and Monroig prohibited the assignment or subleasing of the premises, as well as the use of the premises for other purposes not authorized by Esso.[14] Monroig's unsubstantiated allegation that the rent increase violated DACO regulations are simply insufficient to meet his burden of proving a substantial likelihood of success on the merits. Aside from DACO's regulations themselves, no evidence was presented on this issue.[15] Monroig argues that there are serious questions regarding Esso's predicated reasons for the rent increase. His questions are based on the fact that at the hearing Mrs. Díaz did not know the acquisition price of the land where the station is located nor why some of the equipment at the station was listed in Esso's property records at substantially different costs (Docket # 33, pp. 12–13; Docket # 28, pp. 68–77). However, as clarified at the hearing, Mr. Rivera, the territorial manager, was the one that calculated the new rent, not Mrs. Díaz (Docket # 28, p. 75). Finally, the Court will not assume, as Monroig suggests, that because the extensions came after the notice of nonrenewal was sent, that the negotiations were a sham. Therefore, given the PMPA defense available to Esso, we find that Monroig failed to prove the requisite substantial likelihood of success on the merits for the issuance of a preliminary injunction. Accordingly, his request for a preliminary injunction is **DENIED.**

## Conclusion

For the reasons expressed herein, Monroig's request for dismissal of Esso's declaratory judgment claim is **DENIED,** Esso's request for declaratory judgment is **HELD IN ABEYANCE,** and Monroig's motion for a preliminary injunction is **DENIED.**

**SO ORDERED.**

---

14. Monroig admitted that he co-owned some of the business on the premises in violation of the contract (Docket # 29, pp. 160–62).

15. In his brief, Monroig argued that because Esso did not call Mr. Raúl Rivera, the person in charge of Esso and Monroig's relationship, to the stand, he was prevented from cross-examining him. However, Monroig made no attempt to and in fact did not call him as a witness.