**INTERSTATE PETROLEUM CORPORATION, Plaintiff–Appellee,**

v.

**Robert C. MORGAN, d/b/a Green Acres Gas and Grocery; Vickie L. Morgan, d/b/a Green Acres Gas and Grocery, Defendants–Appellants.**

**Chevron U.S.A. Incorporated, Amicus Curiae.**

**Interstate Petroleum Corporation, Plaintiff–Appellant,**

v.

**Robert C. Morgan, d/b/a Green Acres Gas and Grocery; Vickie L. Morgan, d/b/a Green Acres Gas and Grocery, Defendants–Appellees.**

**Chevron U.S.A. Incorporated, Amicus Curiae.**

**Nos. 97–1409, 97–1481.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 23, 2001.

Decided May 1, 2001.

**ARGUED:** Alan Gordon McGonigal, Bailey, Riley, Buch & Harman, L.C., Wheeling, West Virginia, for Appellants. Steven William Zoffer, Dickie, McCamey & Chilcote, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Arch W. Riley, Sr., Bailey, Riley, Buch & Harman, L.C., Wheeling, West Virginia, for Appellants.

Before WILKINSON, Chief Judge, WIDENER, WILKINS, NIEMEYER, WILLIAMS, MICHAEL, MOTZ, TRAXLER, KING, and GREGORY, Circuit Judges.

Vacated and remanded with instructions. Judge WIDENER delivered the opinion of the court, in which Chief Judge WILKINSON and Judges NIEMEYER, MICHAEL, KING and GREGORY joined. Judge NIEMEYER wrote a concurring opinion. Judge WILKINS wrote a dissenting opinion, in which Judges WILLIAMS, MOTZ, and TRAXLER joined.

## OPINION

WIDENER, Circuit Judge:

This appeal arises from judgment on a jury verdict in favor of Interstate Petroleum Corporation (Interstate). Robert C. Morgan and Vickie L. Morgan appeal, asserting that the district court lacked subject matter jurisdiction over the case. In addition, the Morgans contend that Interstate's claim for money damages should not have been presented to the jury. Interstate cross-appeals the district court's ·denial of its motion for attorney's fees. On September 8, 2000, because it found that the district court lacked subject matter jurisdiction to decide this case, a divided panel of this court decided to vacate the judgment and remand the case for dismissal. *Interstate Petroleum v. Morgan,* 228 F.3d 331 (4th Cir.2000). The panel decision was vacated and rehearing en banc granted on November 9, 2000. Because the district court did not have subject matter jurisdiction to decide the case, we vacate the judgment of the district court and remand for dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and do not address the Morgans' damages argument or Interstate's cross-appeal for attorney's fees.

I.

On April 29, 1993, Interstate and the Morgans, d/b/a Green Acres Gas and Gro-

cery, entered a franchise agreement whereby Interstate, as franchisor, agreed to sell British Petroleum (BP) brand gasoline and petroleum products to the Morgans, as franchisees. The terms of the agreement also allowed the Morgans to operate their service station under the BP logo and required the Morgans to obtain a $31,500 irrevocable letter of credit from which Interstate could draw amounts due and unpaid under the contract. Despite nine requests over the next 18 months, the Morgans failed to obtain the required letter of credit, and on December 5, 1994, Interstate notified the Morgans of its intent to terminate the franchise agreement based on their nonperformance. Instead, Interstate apparently gave the Morgans another chance to keep the franchise. This last chance was embodied in a letter contract, dated December 12, 1994,[1] in which the Morgans agreed to consent to the termination of the franchise should they fail either to begin making monthly payments to Interstate in satisfaction of an earlier note or fail to deliver a $20,000 letter of credit to Interstate by January 4th, 1995.

After the Morgans failed to comply with the terms of the letter agreement of December 12th, Interstate brought suit in federal court, claiming breach of contract.[2] Interstate's complaint, filed on January 11, 1995, alleged federal question subject matter jurisdiction under 28 U.S.C. § 1331,

and the Petroleum Marketing Practices Act (PMPA or the Act), 15 U.S.C. §§ 2801–2841. The Morgans, on January 11, 1995, filed a separate suit in the district court based on state contract law, a suit which they later voluntarily dismissed on May 21, 1996. The district court granted Interstate's motion for injunctive relief, requiring the Morgans not to display the BP logo. The Morgans, on November 21, 1995, filed a motion to dismiss under Federal Rule of Civil Procedure 12(h)(3),[3] asserting that the district court lacked subject matter jurisdiction because the PMPA did not authorize actions brought by a *franchisor* against a *franchisee*.[4] The district court denied the Morgans' motion to dismiss and their subsequent motion for partial dismissal, and the case proceeded to trial. Following trial, the jury awarded Interstate $42,901.50 in damages. The Morgans then made several post-trial motions, including another motion to dismiss for want of jurisdiction under Rule 12(h)(3). The district court denied the motion to dismiss, and the Morgans appealed.

## II.

Interstate's complaint alleged that the Act gave the court subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[5] The Morgans' pre-trial motion to dismiss argued that the district court had no federal question jurisdiction over Interstate's suit

---

1. The letter agreement is referred to in the Special Verdict as a Termination Agreement.

2. Interstate sought injunctive relief to enjoin the Morgans from displaying the BP logo and also sought damages, attorney's fees, and costs.

3. Federal Rule of Civil Procedure 12(h)(3) provides that: "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. Proc. 12(h)(3).

4. In relevant part, section 2805(a) of the PMPA provides: "[i]f a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the *franchisee* may maintain a civil action against such *franchisor.*" 15 U.S.C. § 2805(a) (emphasis added).

5. Neither party contends that the facts of this case support an exercise of the court's diversity jurisdiction.

because the PMPA does not authorize franchisors to maintain a cause of action against franchisees. The Morgans repeated this argument in their post-trial motion to dismiss and repeat it again on appeal.

■ The Supreme Court has stated that it is the "special obligation" of appellate courts to evaluate not only their own subject matter jurisdiction "but also [the jurisdiction] of the lower courts in a cause under review, even though the parties are prepared to concede it." *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (internal quote omitted). In fact, we must consider questions regarding jurisdiction whenever they are raised, and even sua sponte. *Plyler v. Moore,* 129 F.3d 728, 731 n. 6 (4th Cir.1997), *cert. denied,* 524 U.S. 945, 118 S.Ct. 2359, 141 L.Ed.2d 727 (1998). Accordingly, this case must be dismissed if we conclude that the district court lacked subject matter jurisdiction.

■ Absent diversity, a district court has subject matter jurisdiction in a case such as this only if the action arose under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The Court's recent articulation of "arising under" jurisdiction found in *Franchise Tax Bd. v. Const. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), controls our inquiry into whether the district court had jurisdiction over Interstate's claims. Congress has given the lower federal courts jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.,* 463 U.S. at 27, 103 S.Ct. 2841. Interstate has argued throughout the litigation, and

the district court agreed, that Interstate's breach of contract claim and request for injunctive relief state federal questions under the Act.

■ Interstate contends that "federal subject matter jurisdiction is proper ... pursuant to 28 U.S.C. § 1331 and ... 15 U.S.C. § 2801." Brief, p. 15. The argument goes that since § 2805(a) provides for a suit by a "franchisee ... against [a] franchisor" who fails to comply with the statute that a "majority of courts presiding over the issue have held that the Act implicitly authorizes the franchisor to maintain the same cause of action and, ... pursue the same remedies against a franchisee in a federal court as a franchisee can maintain against a franchisor." Br. p. 16. That proposition was accepted by the Morgans, Interstate argues, to sustain jurisdiction. Such position, however, is not well taken for three reasons. First, *Coyne & Delany Co. v. Blue Cross & Blue Shield, Inc.,* 102 F.3d 712, 714 (4th Cir.1996), is controlling in its holding that the grant of jurisdiction by a statute to one party to a transaction does not imply jurisdiction to other parties. So conferring jurisdiction in terms on a franchisee under § 2805(a) does not implicitly confer jurisdiction on a franchisor. Second, *Hagans v. Lavine,* 415 U.S. 528, 533–535, n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), is controlling as to decisions of other courts which, as here, have "presid[ed] over" cases involving similar parties without deciding whether or not they have jurisdiction. These are not holdings by the presiding courts that they have jurisdiction. Third, *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 18, 71 S.Ct. 534, 95 L.Ed. 702 (1951), is controlling so that even if a party agrees that a court has subject matter jurisdiction, such agreement is not binding on a court or on the party. In connection with these questions, none of the federal courts of appeals have

held, under the same or similar facts which exist here, that federal question jurisdiction exists under the Petroleum Marketing Practice Act, 15 U.S.C. § 2801, et seq. The district courts are divided on the subject, with, in our opinion, the better reasoned decisions of those courts denying jurisdiction.

■ Having concluded that the Petroleum Marketing Practices Act, neither directly nor by implication, confers jurisdiction upon Interstate, the franchisor, the claim of federal question jurisdiction in this case by Interstate then calls for an examination of whether Interstate's "right to relief necessarily depends on resolution of a substantial question of federal law," as shown by "a well pleaded complaint." *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. 2841. The way to ascertain the proper answer to this question is by an examination of the complaint, a copy of which is appended to this opinion as Exhibit A.

The first mention of the Petroleum Marketing Practices Act in the complaint is on the first page thereof under a section called *"JURISDICTION AND VENUE,"* the pertinent parts of which are quoted as follows: "The court has subject matter jurisdiction under this Act based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq."

The *only* other mention of the Act in the complaint is on page 3 thereof, paragraph 12, which is, in pertinent part: "Plaintiff advised the defendants of its intent to terminate its contract as a result of defendants' continued non-performance and breach of the contract pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq."

No other mention by the PMPA is made in the complaint. Neither is there any paraphrase of the statute or of any part of the statute, and the only substantive reference to the statute is in paragraph 12, just mentioned, which paragraph 12 is under *COUNT I.—BREACH OF CONTRACT.* No claim is made that either the Morgans or Interstate has violated any provision of the statute or is holding the other accountable for such a violation.

A fair reading of the complaint shows only a prayer for damages and injunctive relief because of a claim that the Morgans did not comply with the terms of a contract of April 29, 1993 which had been amended by an agreement to terminate the same, dated December 12, 1994. No terms or provisions of the statute are mentioned in the complaint, except as recited above, and the judgment in this case, filed June 6, 1996, attached to this opinion as Exhibit B, is only for a money judgment in the amount of $42,901.50 plus a stipulated amount of $1,562.05, for certain charges on account of credit cards.

We are of opinion that the complaint states nothing more than a complaint for breach of contract under state law, and, indeed, we are so bold as to suggest that Interstate's claim of federal question jurisdiction may well be nothing more than an attempt to bring this breach of contract case in a federal, rather than a state, forum when neither the jurisdictional amount ($50,000) nor the citizenship requirements could be met.

Even the prayer of the complaint, as best considered, is only for injunctive relief and for a money judgment for breach of contract, neither having anything to do with the provisions of the statute.[6]

---

6. An item-by-item analysis of the complaint reveals nothing to the contrary.

On the first page the paragraph called *COMPLAINT* states only that the parties are Interstate and the Morgans.

■ In its brief, Interstate argues that its complaint requests a declaration from the district court that its termination of the franchise was proper. Br. p. 21. Since an examination of the complaint, which was never amended, shows that such is not the fact, any such implicit request would have had to have come under Fed.R.Civ.P. 15(b).[7]

■ Rule 15(b) provides, "When issues not raised by the pleadings are *tried* by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b) (emphasis added). It is true that a question of declaratory relief was discussed on occasion during the course of this case; however, it is clear from the record, including the complaint, answer, all the other various motions and orders, the jury instructions, the very form of the special verdict, and the absence of an order by the district court granting or denying declaratory relief, that the question of whether Interstate had complied with the PMPA in terminating the franchise was never tried.

An examination of the entire record reveals only that the case is nothing more or less than a dispute under state law over a claimed breach of contract. That only was claimed by Interstate, and that only was defended by the Morgans. Neither side sought the construction of any federal statute, the plaintiff claimed only that the contract was breached, and the defendants denied that it was. Neither side stated a federal question.

■ Even though West Virginia contract law created Interstate's cause of action, the case might still be one "arising

The item called *JURISDICTION AND VENUE* on the first and second pages states only the claim of federal question jurisdiction recited before in the body of this opinion and the claim of venue in the Northern District of West Virginia, with the addition that some of the defendants' conduct was accomplished by instrumentalities of interstate commerce, including mail, facsimile, telephone, and motor vehicle use or transportation.

The next item called *PARTIES*, on page 2, is a slightly more detailed description of Interstate and the Morgans.

The next item, called *GENERAL AVERMENTS*, on pages 2 and 3, is a recitation of the facts on which Interstate relies with respect to its contract of sale, which it claims was breached. The statute, the PMPA, is nowhere mentioned under *GENERAL AVERMENTS*.

The next item, *COUNT I–BREACH OF CONTRACT*, on pages 3, 4, 5 and 6 of the complaint, repeats the averments described above under *PARTIES* and *GENERAL AVERMENTS* and continues with a statement of the facts upon which Interstate relies for its sought—for money judgment and injunctive relief. That item contains only additional facts relied on by Interstate as its claim for judgment and injunctive relief and mentions the PMPA only as follows: "Plaintiff advised the Defendants of its intent to terminate its contract as a result of Defendants' continued nonperformance and breach of the Contract pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et sec* [sic]."

The next item appearing on pages 6 and 7 of the complaint is called *COUNT II–PRAYER FOR INJUNCTIVE RELIEF*. This item repeats the matters stated under items *PARTIES*, *GENERAL AVERMENTS*, and *COUNT I–BREACH OF CONTRACT* and states facts claimed upon which injunctive relief is justified and the conclusion that irreparable harm would result unless the Morgans are forbidden from using the BP brand.

Nothing else appears in the complaint.

7. Of course, a claim under the Declaratory Judgment Act, even if made, does not confer jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). And the case was not tried as a request for declaratory relief or on account of the construction of a statute. The answer, jury instructions, and special verdict are attached as Exhibits C, D, and E.

under" the laws of the United States if Interstate's well-pleaded complaint established that its right to relief under state law necessarily required "resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841. In this regard, Interstate asserted at oral argument that the PMPA was construed at trial because the jury's finding of liability against the Morgans also necessarily embodied a finding that Interstate had not violated the PMPA in terminating the franchise. We disagree.

It is clear from the record that Interstate established its right to relief to the satisfaction of the jury by proving its breach of contract claim under state law and without reference to any provision of the PMPA. At trial, neither the pleadings, nor the orders, nor the jury instructions nor the special verdict form made any mention of any provisions of the PMPA. Instead, the jury was merely instructed to find whether the Morgans had breached either the original franchise agreement or the Termination Agreement and, if so, to determine damages. Neither did the district court construe any provision of the PMPA when it granted injunctive relief, nor did the judgment of the district court mention or depend upon any provision of the PMPA, or any other provision of federal law. *The Morgans never denied Interstate's right to terminate the franchise if the contract was breached; they did deny that the contract was breached.*

■ Thus, the PMPA did not create Interstate's cause of action, nor was there a disputed question of federal law that was a necessary element of Interstate's claim. Even if Interstate intended to rely on the PMPA as a defense to a counterclaim by the Morgans, or if Interstate anticipated that the Morgans would somehow use the PMPA to defend against Interstate's contract claims, the well-pleaded complaint rule, of course, precludes finding "arising under" jurisdiction on such grounds. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 112–14, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (discussing well-pleaded complaint rule and explaining that jurisdiction will not be found in an anticipated defense).

In sum, "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). The cause of action in this case was created under the law of West Virginia, so the suit arises under that law, not federal law.[8]

### III.

We are thus of opinion that the district court was without subject matter jurisdiction in Interstate's action against the Morgans. Accordingly, the judgment of the district court must be vacated, and the case remanded to the district court with directions to dismiss the case without prejudice for lack of subject matter jurisdiction.

*VACATED AND REMANDED WITH INSTRUCTIONS.*

---

**8.** The dissent does not take issue with the rule of decision in *Franchise Tax Board*, 463 U.S. at 27, 103 S.Ct. 2841, that "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." In that respect, the dissent does not call attention to any "substantial question of federal law" that was involved in this case. The undisputed fact remains that the Morgans never denied Interstate's right to terminate the franchise if the contract was breached, but they did deny that the contract was breached. And that question of state law was the only question in the case, as Exhibits A through E demonstrate.

NIEMEYER, Circuit Judge, concurring:

Despite the lawyers' obfuscating advocacy, the question in this case is straightforward: Does Interstate Petroleum's complaint, or any amendment of it, constructive or otherwise, seek to vindicate or resolve a federal right for which Congress provided subject matter jurisdiction in the district court? The record indicates that no such right was ever at issue and therefore that the district court did not have subject matter jurisdiction over this case.

This jurisdictional issue does not concern whether a declaratory judgment action can be brought under the Petroleum Marketing Practices Act ("PMPA") or whether Interstate Petroleum constructively amended its complaint. The question, rather, is whether Interstate Petroleum's oral suggestion that it was seeking a declaratory judgment under the PMPA, without identifying any PMPA issue sought to be resolved, could justify the federal jurisdiction conferred by the PMPA even if we can assume that any such issue was pled, tried, or decided in this case. To me, the answer is clearly no.

While Morgan, d/b/a Green Acres Gas & Grocery ("Morgan"), was a franchisee, as that term is defined by the PMPA, see 15 U.S.C. § 2801(4), and Interstate Petroleum was similarly a franchisor, see id. § 2801(3), the dispute between them that was presented to the district court and decided by it was not one arising under the PMPA. Rather, as I demonstrate, the dispute was a garden variety breach-of-contract claim under state law over which the district court did not have subject matter jurisdiction.

At the outset, it is important to understand the scope of the PMPA and the scope of the federal interest protected by that Act. The PMPA was enacted "to protect petroleum franchisees from arbitrary or discriminatory terminations and nonrenewals." *Mobil Oil Corp. v. Va. Gasoline Marketers & Auto. Repair Ass'n*, 34 F.3d 220, 223 (4th Cir.1994). It fulfilled its purpose by establishing "minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel ... [by prohibiting] a franchisor from terminating or failing to renew a franchise without satisfying certain notice provisions and without stating a reason for termination sanctioned by the act." *Checkrite Petroleum, Inc. v. Amoco Oil Co.*, 678 F.2d 5, 7 (2d Cir.1982) (internal quotation marks and citations omitted). In *Checkrite Petroleum*, the plaintiff, who was a petroleum broker acting in the marketing chain between Amoco and Amoco's dealers, sought to assert rights under the PMPA when it was terminated by Amoco. In concluding that the broker was not a "distributor" or "retailer" as used in the PMPA's definition of "franchisee," the court denied the broker a remedy, noting that the Act should be construed strictly because "the statute in question is in derogation of common law rights." *Id.* at 8. The court observed that the legislative history of the Act expresses "no congressional intent to go beyond[its] plain terms." *Id.* at 10.

It is only for vindication of the limited rights protected in 15 U.S.C. §§ 2802 and 2803 that the PMPA confers subject matter jurisdiction on district courts. Section 2805 authorizes a franchisee to "maintain a civil action against [a] franchisor [who violates 15 U.S.C. § 2802 or § 2803] ... in the district court[s] of the United States." 15 U.S.C. § 2805(a).

The facts in this case do not present a case or controversy arising under the PMPA. Interstate Petroleum, by a contract with Morgan, dated April 29, 1993, agreed to sell Morgan gasoline on credit, provided that Morgan obtain a $31,500 ir-

revocable letter of credit. When Morgan failed to deliver the letter of credit and to satisfy its ongoing indebtedness to Interstate Petroleum, the parties entered into a "Mutual Consent to Termination Agreement," dated December 12, 1994. In this second agreement, Morgan again agreed to make monthly payments against its indebtedness to Interstate Petroleum and to obtain a letter of credit, this time by January 1995. Again, Morgan breached its contractual undertakings, and Interstate commenced this action for breach of both contracts.

Even though Interstate Petroleum sought to rely on the PMPA for federal jurisdiction, no provision under the PMPA supported Interstate Petroleum's claims for breach of contract. The PMPA provides limited rights *to a franchisee* who is terminated discriminatorily or without statutorily required notice. Moreover, in its complaint, Interstate Petroleum did not seek to resolve any claim that Morgan, as franchisee, had asserted under the PMPA. On the contrary, the pleadings indicate that the parties mutually agreed to terminate the relationship, rendering moot any PMPA issue, if one had ever been alive. Thus, the entire dispute between the parties in this case centered on Interstate Petroleum's efforts to enforce its contractual rights in the two contracts with Morgan and to require Morgan to honor its financial commitments. It is therefore understandable that this case was *commenced* as a breach of contract claim, *tried* as a breach of contract claim, and *decided* as a breach of contract claim—facts that are conclusively established by the record.

First, in its complaint, Interstate Petroleum asserted solely a breach of contract claim, asking for damages and injunctive relief "as a direct and proximate result of Defendants' breach of the Contract of Sale and continuous failure to specifically per-

form thereunder." The complaint makes no reference to any PMPA right that had been asserted by Morgan and that Interstate Petroleum was trying to resolve. Moreover, Interstate Petroleum never filed a motion to amend its complaint to make such a reference. This is not surprising because there was no issue ever raised between the parties that the PMPA had been violated.

Second, when Interstate Petroleum presented the case to the jury, counsel for Interstate Petroleum described the nature of the action to the jury, describing it as a simple contract case:

> When you go up to begin your deliberations, you will have with you a special verdict slip, which ultimately will be the papers that will reflect what you have decided to be your verdict in this case. There will be a series of a few questions for you to decide. The first question to you will be *whether you find that the defendants, Robert and Vickie Morgan, breached their contract of sale* with Interstate Petroleum, dated [April] 29, 1993. That was Exhibit 2 and you will have that to look at; and, also, *whether they breached the subsequent termination agreement that the parties entered into.* And you will recall the Morgans having executed that on December 12, 1994, and that is Exhibit Number 16.

(Emphasis added). In explaining to the jury its burden of proof, Interstate said that it must prove three things in order to recover, "That there was a contract, that the Morgans in this case breached a term or requirement of that contract, and we also have to prove Interstate's losses and expenses, what in law is known as the damages in this case." After completing his closing argument, counsel for Interstate Petroleum concluded with the same theme:

[O]n behalf of my clients, I would request that you enter your verdict in this case in favor of Interstate Petroleum, the plaintiff in this case, in an amount— *after you find the breach of contract has occurred,* in an amount that you find to be fair and reasonable to compensate my clients for the breach of promise and for their losses that they have sustained. Thank you very much, Ladies and Gentlemen.

(Emphasis added).

Third, in requesting jury instructions, Interstate Petroleum submitted requests to the court only on a breach-of-contract theory under West Virginia law. Its first request is typical:

You are instructed to assume that the defendants' failure to provide an irrevocable letter of credit in this case constituted *a material breach of their contract* with the plaintiff, Interstate Petroleum Corporation. Accordingly, your sole task will be to determine the amount of damages which you find to be fair and reasonable in order to compensate Plaintiff, Interstate, for its losses, expenses and lost profits.

(Emphasis added).

Fourth, when the district court actually instructed the jury, it did so only on the common law of contracts. And, consistently, when it submitted the case to the jury, it gave the jury only one question to answer on liability, that for breach of contract:

Do you find that Robert C. Morgan and Vickie L. Morgan, d/b/a Green Acres Gas & Grocery, *breached the Contract* of Sale dated April 29, 1993, or the Termination Agreement dated December 12, 1994?

(Emphasis added).

Finally, the jury returned a verdict deciding only that Morgan had breached its contracts and awarding damages, and that verdict became the judgment in the case.

In short, any PMPA claim that Morgan may have had or that Interstate Petroleum may have said it wanted to resolve through a declaratory judgment was never *pled* in any complaint or amended complaint, never *tried* to the jury, never *decided* by the jury, and never *reflected* in any judgment. From beginning to end, the case was a state common-law breach-of-contract case.

The dissenting opinion suggests that the parties reached an agreement to amend the pleadings and try the case as a declaratory judgment action under the PMPA. While there can be no doubt that the parties discussed a declaratory judgment under the PMPA and even agreed that Interstate Petroleum could have a PMPA issue resolved in the case, presumably in an attempt to agree on subject matter jurisdiction, *no such issue under the PMPA was ever articulated;* indeed none existed for articulation. There simply was no PMPA case or controversy. And even if there were such a controversy, the discussions between counsel and the court never matured into anything more than just talk. And their talk is all that the dissenting opinion parades. Critically absent from the dissent's discussion about whether this was a federal case is the articulation of a viable issue under the PMPA. Even then, none was ever pleaded, tried, argued, or decided. Any federal claim suggested by the dissent is therefore a phantom claim based on an unknown issue.

This case does not involve a case or controversy under federal law, nor does it have the clear invocation of federal subject matter jurisdiction that we require. There is no statement of a claim or dispute over a claim relating to any violation by Interstate Petroleum of 15 U.S.C. § 2802 or § 2803, the only claims over which the

PMPA gives federal courts jurisdiction. *See* 15 U.S.C. § 2805(a). Because there was no claim arising under the PMPA, the district court never had federal jurisdiction, and it could not have entered the judgment in this case. Accordingly, I concur in the majority opinion and judgment.

WILKINS, Circuit Judge, dissenting:

The majority devotes most of its opinion to four propositions with which no member of this court disagrees: first, that subject matter jurisdiction cannot be created by agreement of the parties; second, that a franchisor cannot sue a franchisee under the Petroleum Marketing Practices Act (PMPA), *see* 15 U.S.C.A. §§ 2801–2841 (West 1998); third, that Interstate's complaint as originally filed did not seek a declaration that Interstate did not violate the PMPA in terminating the franchise agreement with the Morgans; and fourth, that this case involved no "substantial question of federal law."

None of this, however, addresses the central issue before us: whether the parties, pursuant to Federal Rule of Civil Procedure 15(b), agreed that Interstate was in fact seeking a declaratory judgment that it did not violate the PMPA in terminating the franchise agreement. A review of the record compels the conclusion that such an agreement was clearly made, repeatedly acknowledged by the Morgans, and unequivocally recognized by the district court. These repeated acknowledgments that Interstate sought declaratory relief effected a constructive amendment of the pleadings and thereby relieved Interstate of any responsibility to formally amend its complaint. And, Interstate's request for a declaration of the Morgans' federal rights created a federal question that was the basis for the subject matter jurisdiction of the district court.

Having presented their defense to a jury in federal court and lost, the Morgans now are attempting to eliminate the basis for federal court jurisdiction by repudiating their numerous previous acknowledgments. Of course, the law does not allow a party to escape a judgment against it with such a self-serving, post hoc change of position. Because the majority's decision enables the Morgans to do just that, I respectfully dissent.

I.

Before considering the question of whether Interstate's complaint was constructively amended to include a request for a declaratory judgment that it terminated the franchise agreement in accordance with the PMPA, the jurisdictional significance of that issue should be addressed.

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201(a) (West 1994). Although the Declaratory Judgment Act "does not broaden federal jurisdiction, *see, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), it does allow parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action." *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987) (parallel citations omitted); *see Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 & n. 19, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937). That the federal right actually litigated when declaratory relief is sought may belong to the declaratory judgment *defendant* rather than to the declaratory judgment *plaintiff* does not change the fact that the action arises un-

der federal law. *See Columbia Gas Transmission Corp. v. Drain,* 237 F.3d 366, 370 (4th Cir.2001); *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1179 (5th Cir. 1984); *see also Gulf States Paper,* 811 F.2d at 1467 (explaining that the declaratory judgment remedy "allows a party to bootstrap its way into federal court by bringing a federal suit that corresponds to one the opposing party might have brought" (internal quotation marks omitted)). Accordingly, "[a] person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there." *Standard Ins. Co. v. Saklad,* 127 F.3d 1179, 1181 (9th Cir.1997); *see Columbia Gas Transmission,* 237 F.3d at 370 (explaining that under certain circumstances "the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff"); *Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159,* 714 F.2d 342, 345 (4th Cir.1983) (explaining, in context of removal from state court, that whether a district court has subject matter jurisdiction over a declaratory judgment action is determined "by reference to the character of the threatened action").

Here, unquestionably an action initiated by the Morgans alleging that Interstate's termination of the franchise agreement violated the PMPA would arise under federal law because the PMPA creates such a cause of action. *See American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) (explaining that "[a] suit arises under the law that creates the cause of action"). It follows that the district court would also have had jurisdiction to hear an action seeking a declaration that Interstate did not violate the Morgans' rights under the PMPA.[1]

## II.

I now turn to the central issue of whether Interstate's complaint was constructively amended. "It is well-settled that the parties may constructively amend the complaint by agreeing, even implicitly, to litigate fully an issue not raised in the original pleadings." *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir.1997); *see* Fed.R.Civ.P. 15(b). A constructive amendment occurs when "the parties recognize[ ] that an issue not presented by the pleadings entered the case at trial." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1493, at 19 (2d ed.1990); *see Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1013 (6th Cir.1999) (holding that complaint was constructively amended when defendants treated complaint as having been amended even though plaintiffs never actually filed an amended complaint after having been granted leave to do so); *Whitaker v. T.J. Snow Co.,* 151 F.3d 661, 663 (7th Cir.1998) (explaining that "[b]ecause both parties squarely addressed the strict liability theory in their summary judgment briefs, the complaint was constructively amended to include that claim"); *Suiter v. Mitchell Motor Coach*

---

1. Of course the majority is correct to state in its footnote 8 that I do not maintain that this suit involved a "substantial question of federal law." However, because federal law created the PMPA cause of action at issue in the declaratory judgment claim, no such "substantial question of federal law" was required to establish federal question jurisdiction. *See* *Franchise Tax Bd.,* 463 U.S. at 27–28, 103 S.Ct. 2841 (explaining that district courts have federal question jurisdiction over cases either when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law" or when "federal law creates the cause of action").

*Sales, Inc.,* 151 F.3d 1275, 1279–80 (10th Cir.1998) (holding that defendant's answer was constructively amended to add an unpled affirmative defense when the defense was asserted in a motion for judgment as a matter of law and plaintiff treated the defense as if it had been properly pled); *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1172 (1st Cir.1995) (stating that a complaint may be constructively amended when a claim is introduced outside of a complaint "and then treated by the opposing party as having been pleaded"); *Walton v. Jennings Cmty. Hosp., Inc.,* 875 F.2d 1317, 1320 & n. 3 (7th Cir.1989) (holding that the pleadings were constructively amended when the district court sua sponte injected an unpled cause of action into the case in denying defendant's motion for summary judgment and both parties proceeded to prepare for trial on the new issue).

Interstate did not request a declaratory judgment in its complaint. Nevertheless, subsequent to Interstate's filing of its complaint, the parties explicitly agreed on numerous occasions that Interstate's entitlement to declaratory relief was part of this lawsuit. Interstate's complaint alleges that Interstate advised the Morgans of its intent to terminate the franchise agreement in accordance with the PMPA. *See* J.A. 12. The Morgans denied that allegation in their answer and on the same day filed their own suit in federal district court through their company, B & V Enterprises, Inc., seeking to enjoin Interstate from debranding their business and requesting specific performance of the franchise agreement.[2] Considering that the parties were not diverse and that the PMPA specifically forbids termination of petroleum franchise agreements except under specified circumstances, *see* 15 U.S.C.A. § 2802, it would appear that the Morgans intended to assert that Interstate violated the PMPA by terminating the franchise agreement, thus providing a basis for federal question jurisdiction.

The Morgans then moved to dismiss Interstate's action, contending that federal question jurisdiction did not exist because Interstate could not bring a cause of action under the PMPA. *See* Mem. in Supp. of Def.'s Mot. to Dismiss Civil Action No. 5:95:CV2, at 3–4. In its opposition to the Morgans' motion, Interstate asserted that federal question jurisdiction exists when "the franchisor seeks an adjudication of federal claims that the franchisee may threaten to assert against him." Br. in Opp'n to Def.'s Mot. to Dismiss Pursuant to Rule 12(b) of the Fed.R.C.P., at 5. Applying this rule, Interstate stated that it "anticipate[d] that [the Morgans would] attempt to use the PMPA as a defense to the action asserted against [them] as well as a basis for [their] claim that [their] right[s] as a franchisee were not properly terminated." *Id.*

Before the district court ruled on the motion to dismiss, the Morgans filed a motion for "partial dismissal" in which they sought dismissal only of Interstate's action to the extent that it sought damages. *See* Defs. [sic] Mot. for Partial Dismissal. In a memorandum supporting this motion, they stated, "[Interstate] filed a complaint in this action asking for Declaratory Judgment as to its termination of the franchise agreement between it and the [Morgans]." Defs.' Mem. in Supp. of Mot. for Partial Dismissal, at 1. The Morgans also asserted that "the Court can determine the rights of the parties under [the PMPA]." *Id.* at 3. The Morgans argued

---

**2.** This suit was consolidated with Interstate's and remained viable for more than 16 months. The Morgans moved successfully to voluntarily dismiss the suit without prejudice only two weeks prior to trial.

nevertheless that Interstate's damage claim should be dismissed because Interstate was not entitled to damages under the Declaratory Judgment Act. *See id.* The district court denied the Morgans' motions for dismissal, erroneously reasoning that Interstate could bring an action under the PMPA; it also ruled that Interstate could bring a damages claim in conjunction with the declaratory judgment action that the Morgans had acknowledged existed. *See* Order Denying Robert C. Morgan's & Vickie L. Morgan's Mots. to Dismiss, at 2–4. Subsequently, in a memorandum supporting a motion in limine, the Morgans again stated that the case was "a suit to construe a federal statute," that Interstate sought a "declar[ation] that its termination of the franchise agreement was valid," and that "[t]he only jurisdiction this Court has is to interpret the [PMPA]." Mem. in Supp. of Defs. [sic] Mot. in Limine, at 1–2.

Interstate's suit then proceeded to trial. Throughout the course of the trial, the district judge referred to the fact that Interstate was seeking a declaratory judgment although it had not requested such relief in the complaint:

- "I have ruled on the fact that [Interstate] may recover damages under the Act or under a declaratory judgment." Tr. 123.

- "[The Morgans] have raised the fact that damages are being sought under [the] Declaratory Judgment Act." *Id.* at 126.

- "I think that there is federal question jurisdiction under the Declaratory Judgment Act...." J.A. 22.

- "The question ... is whether or not in a declaratory judgment, which you did not plead in your complaint, which I

have determined exists in the complaint ... damages may be recovered...." *Id.* at 23–24.

- "This is a case in which I think [Interstate] clearly has a right under the Declaratory Judgment Act to obtain a declaratory judgment as to its right to terminate under the [PMPA]." Tr. 287.

Also, in its post-trial order, the district court recognized that the presence of the declaratory judgment claim was the basis for federal question jurisdiction:

- "This Court's earlier determinations that subject matter jurisdiction under the PMPA existed were premised upon the Morgans' concession that the complaint sought a declaration of rights under the federal law." J.A. 62.

Interstate also offered the declaratory judgment claim as a basis for its request for an award of attorneys' fees. *See id.* at 29. For their part, the Morgans, prior to the jury finding against them, never retreated from their position that Interstate's entitlement to declaratory relief was an issue in the case. Indeed, the Morgans' counsel stated, "[T]here is no question in my mind that the Declaratory Judgment Act ... allows the construction of a federal statute, which the [PMPA] is; so as far as termination is concerned, [Interstate] was properly before this Court." *Id.* at 30–31.

In light of all of this, there can be little doubt that the parties explicitly recognized that the issue of Interstate's entitlement to declaratory relief had entered the case and therefore that the complaint had been constructively amended. The amended complaint clearly presented a federal question, and the district court therefore had federal question jurisdiction.[3]

---

**3.** In addition to contending that there was no federal question here, the Morgans maintain that because the PMPA provides a remedy of

money damages only for franchisees and because the PMPA is the sole basis for federal jurisdiction, the district court erred in allow-

### III.

The concurrence concludes that no case or controversy existed regarding Interstate's request for a declaration that it did not violate the PMPA in terminating the franchise agreement.[4]

In order to establish an Article III case or controversy regarding a declaratory judgment claim, a plaintiff must demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

For the reasons I have already discussed, the district court and the parties clearly understood that Interstate had violated the PMPA in terminating the franchise agreement unless the Morgans breached that agreement. *See* 15 U.S.C.A. § 2802. Moreover, whether the Morgans breached the agreement (and thus whether a violation of the PMPA occurred) has been hotly disputed by the parties throughout this case.

The concurrence incorrectly concludes that "the pleadings indicate that the parties mutually agreed to terminate the relationship, *rendering moot any PMPA issue.*" *Ante*, at 224 (emphasis added). The termination agreement to which the concurrence refers was dated December 12,

1994. Yet, one month later, on January 11, 1995, the Morgans, through their company B & V Enterprises, brought suit against Interstate in federal court *contending that Interstate had no right to terminate the franchise agreement and seeking specific performance of the agreement.* *See* Supp. J.A. 68–71. Moreover, the Morgans answered Interstate's complaint on March 14, 1995, asserting that the termination agreement was void because Interstate had engaged in an anticipatory breach of that agreement. It is also worth repeating that the Morgans' suit alleging wrongful termination remained viable for more than 16 months, with the Morgans moving to dismiss the suit without prejudice only two weeks prior to trial. The dispute concerning whether Interstate was justified in terminating the franchise agreement continued throughout the trial. Accordingly, when the parties and the district court agreed that Interstate sought a declaration that it did not violate the Morgans' federal rights under the PMPA in terminating the franchise agreement, the pleadings were constructively amended to include a federal question about which there was a real case or controversy.[5]

The concurrence refers to events subsequent to this constructive amendment as if those events could somehow erase the existence of the federal question jurisdiction

---

ing the jury to consider Interstate's damages claim. However, once the court had jurisdiction over the question of whether Interstate violated the PMPA in terminating the contract, it gained supplemental jurisdiction over Interstate's state-law claim for breach of contract. *See* 28 U.S.C.A. § 1367 (West 1993).

4. While of course not dispositive, at no point previous to, during, or after the trial or on appeal to the panel or the en banc court have the Morgans ever contended that a case or controversy did not exist.

5. The concurrence refers to the repeated representations by the Morgans that they agreed that Interstate was seeking a declaration that it had not violated the PMPA as "just talk." *Ante*, at 225. But a close reading demonstrates that these representations were far more. The "talk" was counsel for the Morgans representing to the court on the record that he understood that the complaint had been constructively amended to include a claim by which Interstate was seeking a declaration that it had not violated the PMPA.

that had already been established. It states that although Interstate proved that the Morgans breached the franchise agreement, Interstate failed to take the steps necessary at the end of the trial to obtain a declaration that the breach justified its termination of the franchise agreement under the PMPA. However, the special verdict by the jury that the Morgans breached the franchise agreement essentially decided the PMPA issue against the Morgans. Indeed, on this basis, Interstate's counsel explained at oral argument that he believed the special verdict actually constituted a declaration that Interstate had not violated the PMPA. Whether Interstate is correct that it actually obtained the declaratory judgment that it had sought or whether Interstate failed at the end of the trial to take the steps necessary to obtain such relief presents at most an academic issue, not one of jurisdictional significance.

In sum, the parties here recognized that the issue of whether the Morgans breached the franchise agreement affected both Interstate's state law contract rights and the Morgans' federal rights under the PMPA. The parties orally agreed, unequivocally, to litigate the Morgans' federal PMPA rights, thereby eliminating the need for any formal amendment of the pleadings. They then proceeded to litigate the question of whether the franchise agreement had ·been breached, reconfirming many times during the trial that the

Morgans' PMPA rights were at issue. In the end, the jury rejected, in a special verdict, the premise of the Morgans' anticipated PMPA claims, thereby resolving once and for all the controversy of whether Interstate was liable under the PMPA for terminating the franchise agreement.

## IV.

Absent the Morgans' repeated and unequivocal position before and during the trial that Interstate was seeking declaratory relief, Interstate might have sought to amend its complaint, or at least could have pursued its breach of contract claim in state court. Allowing the Morgans, now that the jury has ruled against them, to disavow the very acknowledgments they made that kept this lawsuit in federal court in the first place enables them to avoid liability for their breach by "playing fast and loose" with the district court. *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996) (internal quotation marks omitted). I do not favor this result, nor does the law allow it.

## V.

For all of these reasons, I respectfully dissent.[6]

Judge WILLIAMS, Judge MOTZ, and Judge TRAXLER have asked to be shown as joining in this dissenting opinion.

---

**6.** Because I would not vacate the judgment on jurisdictional grounds, I will briefly address Interstate's contention on cross-appeal. Interstate argues that the district court erred in ruling that Interstate was not entitled to recover reasonable attorneys' fees. I would find no error. A successful party in a declaratory judgment action may recover attorneys' fees only when the fees "are recoverable under non-declaratory judgment circum-

stances," such as when the substantive law permits an award of attorneys' fees. *Mercantile Nat'l Bank v. Bradford Trust Co.,* 850 F.2d 215, 216 (5th Cir.1988). Under the PMPA, a franchisor is entitled to attorneys' fees only when a frivolous action is brought against it. *See* 15 U.S.C.A. § 2805(d)(3). Because Interstate filed this action, it is not entitled to recover attorneys' fees.

## APPENDIX TO OPINION

COMPLAINT ....................................................................... *Exhibit A*

JUDGMENT ....................................................................... *Exhibit B*

ANSWER TO COMPLAINT ........................................ *Exhibit C*

FINAL CIVIL JURY INSTRUCTIONS ........................... *Exhibit D*

SPECIAL VERDICT ......................................................... *Exhibit E*

*EXHIBIT A*

District Court
Filed at Wheeling, WV
**JAN 11 1995**
Northern District of WV
Office of the Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| INTERSTATE PETROLEUM | : | Case No.: 5:95CV2 |
| CORPORATION | : | |
| P.O. Box 4006 | : | |
| N. 27th and Vance Avenue | : | |
| Wheeling, WV 26003 | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT C. MORGAN and | : | |
| VICKIE L. MORGAN, d/b/a | : | |
| GREEN ACRES GAS AND GROCER | : | |
| U.S. 250 and S.R. 7 | : | |
| P.O. Box 940 | : | |
| Hundred, WV 26575 | : | |

### COMPLAINT

AND NOW, COMES THE PLAINTIFF, Interstate Petroleum Corporation, by and through its attorneys, Dickie, McCamey & Chilcote and John W. Lewis, II, Esq., and files the within Complaint against the Defendants, Robert C. Morgan and Vickie L. Morgan, d/b/a Green Acres Gas and Grocery and in support thereof, avers as follows:

### JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*

The venue is proper in this District because significant acts and conduct of the Defendants has occurred in the Northern District of West Virginia, mainly the subject gas station owned by the Defendants is located in Hundred, West Virginia in the Northern District. Further, some of the Defendants' conduct herein have been accomplished by various means and instrumentalities of interstate commerce including the use of the United States mail, facsimile transmissions, telephones and motor vehicle transportation into and from the Northern District of West Virginia.

## PARTIES

1.  The Plaintiff, Interstate Petroleum Corporation, is a West Virginia corporation with its principal place of business located at P.O. Box 4006, North 27th and Vance Avenue, Wheeling, West Virginia 26003.

2.  Defendants Robert C. Morgan and Vickie L. Morgan are married individuals doing business as "Green Acres Gas and Grocery" having their principal place of business located at U.S. 250 and S.R. 7, P.O. Box 940, Hundred, West Virginia 26575.

## GENERAL AVERMENTS

3.  At all times relevant hereto, Plaintiff was a licensed distributor of "BP" branded gasoline and petroleum products.

4.  On April 29, 1993, the parties hereto entered into a Contract of Sale for BP branded gasoline and BP petroleum products. The Contract of Sale dated April 29, 1993, attached hereto as Exhibit "A", became effective on March 1, 1993.

5.  Thereafter, the Defendants began displaying the "BP" logo and proceeded to operate their business as a BP station.

6.  Between March 1, 1993 and the present, Defendants' place of business displayed the BP logo on gasoline pumps, signs, canopies, credit receipts and the like.

7.    Pursuant to the April 29, 1993 Contract of Sale, the Plaintiffs made a loan totaling $6,500 to the Defendants which, upon information and belief, was used by the Defendants to facilitate the conversion of Defendants' gas station to a "BP gas station".

8.    Pursuant to the April 29, 1993 Contract of Sale, the Defendants agreed to provide the Plaintiff with a $31,500 irrevocable Letter of Credit drawn upon a qualified lending institution. Contract at P. 18.

9.    Pursuant to the Contract of Sale entered into between the parties, Plaintiffs supplied on a regular and continuous basis BP branded products to the Defendants from March 1, 1993 through January 4, 1995.

## COUNT I. — BREACH OF CONTRACT

10.    The averments set forth in Paragraph 1 through 9 of the within Complaint are incorporated as if more fully set forth herein.

11.    Plaintiff made repeated requests in writing on nine (9) separate occasions that Defendants comply with the terms of the April 29, 1993 Contract of Sale and provide the Letter of Credit required under the terms of the Contract.

12.    Thereafter, upon Defendants' refusal to comply with the terms of the Contract of Sale, Plaintiff advised the Defendants of its intent to terminate its Contract as a result of Defendants' continued nonperformance and breach of the Contract pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*

13.    Despite Defendants' regular assurances and promises that the requisite Letter of Credit would be provided, no such Letter of Credit was timely provided by the Defendants.

14.    Thereafter, several accommodations were made to the Defendants by the Plaintiff which included a reduction of the amount of the agreed irrevocable Letter of Credit from $31,500 to $25,000.

15.    In further attempts to make reasonable accommodations to the Defendants an extension of time to secure the required Letter of

Credit was extended to the Plaintiffs until October 28, 1994. In doing so, however, Plaintiff indicated and Defendants agreed that time was of the essence.

16.  As of October 28, 1994, Defendants had still failed to provide the agreed Letter of Credit.

17.  Accordingly, the Plaintiffs advised the Defendants of its intention to terminate the contract between the parties due to Defendants' continued failure to deliver the agreed Letter of Credit and otherwise comply with the express terms of the April 29, 1993 Contract of Sale.

18.  On December 12, 1994 Defendants signed a Mutual Consent to Termination Agreement in which Defendants agreed that Defendants would begin $400 per month payments to satisfy the initial $6,500 loan made by the Plaintiff to the Defendants with the first payment to commence on December 31, 1994.

19.  The signed Mutual Consent to Termination Agreement also provided that Defendants would provide a Letter of Credit for $20,000 by January 4, 1995 at 5:00 p.m. and again, time was specified to be of the essence. The Mutual Consent to Termination Agreement dated December 12, 1994 is attached hereto as Exhibit "B".

20.  On December 31, 1994, Defendants, contrary to their December 12, 1994 agreement, failed to make the agreed initial $400 payment.

21.  Similarly, on January 4, 1995, Defendants failed to produce the Letter of Credit required by the terms of the Contract of Sale, as reduced by the Plaintiff.

22.  Accordingly, Defendants are in breach of the April 29, 1993 Contract of Sale.

23.  As a direct and proximate result of Defendants' breach of the Contract of Sale and continuous failure to specifically perform thereunder, Plaintiff lost the benefit of said Contract and caused irreparable

injury to the Plaintiff and placed it in the position of being in breach of its own contractual obligations to the BP Oil Company.

WHEREFORE, Interstate Petroleum Corporation respects that this Honorable Court enter judgment in favor of granting injunctive relief including enjoining Defendants from continued display of the "BP" logo by signs, credit receipts, stickers, layout or the design or in any other way holding themselves out as a British Petroleum or BP fueling "gas" station. It is further requested that this Court enjoin Defendants from in any way inhibiting Interstate Petroleum Corporation's or its agent's efforts to debrand the filling station and acquire possession of those materials, signs, stickers, etc. indicating the "BP" logo. Further, Plaintiff requests that it be granted such other relief as this Court deems just and proper, including damages, attorneys' fees, costs and interest thereon.

## COUNT II. — PRAYER FOR INJUNCTIVE RELIEF

24. The averments set forth in Paragraph 1 through 24 of the within Complaint are incorporated as if more fully set forth herein.

25. Plaintiff will suffer immediate, continuing and irreparable harm which cannot be computed in money damages if relief is not granted with respect to the conduct of Defendants, Robert C. Morgan and Vickie L. Morgan d/b/a Green Acres Gas and Grocery. Such immediate, continuing and irreparable harm includes:

(a) wrongful and continued display of the "BP" logo signs, printed receipts, stickers, layout, canopy and/or design at the subject gas station;

(b) wrongfully interfering with Plaintiff's debranding of Defendants' place of business;

(c) damage to Plaintiff's business relationships;

(d) loss of value of the April 29, 1993 Contract of Sale.

26. As a direct and proximate cause of such immediate, continuing and irreparable harm, Plaintiff, Interstate Petroleum Corporation,

respectfully requests that this Honorable Court enter a preliminary and permanent injunction directing as follows:

(a)   Defendants are enjoined from displaying the "BP" logo by signs, printed receipts, stickers, layout or design or in any other way holding themselves out as a British Petroleum or BP fueling gas station;

(b)   Defendants are enjoined from inhibiting, in any way, Interstate Petroleum Corporation's or its agent's efforts to debrand Defendants' filling station and acquire possession and control of those materials, signs, stickers, etc. indicating the "BP" logo;

(c)   Defendants are enjoined from destroying, removing, altering or otherwise disposing of or utilizing the aforesaid materials, signs, stickers, etc. indicating the "BP" logo.

(d)   and that Defendants cease and desist any further operation of their gas station as a "BP" gas station.

WHEREFORE, Interstate Petroleum Corporation respectfully request that this Honorable Court enter judgment in its favor granting the injunctive relief requested herein and such other relief as this Honorable Court deems just and proper, including damages, attorneys' fees, costs and interest thereon.

Dated: January 11, 1995      Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE

By: _____ /s/John W. Lewis _____
John W. Lewis, II, Esq.
W.V. ID #: 2198
Attorneys for Plaintiff,
Interstate Petroleum
Corporation

1233 Main Street
Suite 2002
Wheeling, WV 26003

*EXHIBIT B*

AO 450 (Rev. 5/85) Judgment In a Civil Case

District Court
Filed at Wheeling, WV
JUN 6 1995
Northern District of WV
Office of the Clerk

## UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF WEST VIRGINIA

INTERSTATE PETROLEUM CORPORATION,
      Plaintiff,          JUDGMENT IN A CIVIL CASE

    V.

ROBERT C. MORGAN and VICKIE L. MORGAN,
d/b/a Green Acres Gas & Grocery,    CASE NUMBER: 5:95-cv-2
      Defendants.

[X] Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.
and

[X] Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Plaintiff, Interstate Petroleum Corporation, recover from the Defendants, Robert C. Morgan and Vickie L. Morgan, d/b/a Green Acres Gas & Grocery, the amount of $42,901.50 awarded by the jury; and it is further

ADJUDGED pursuant to stipulation by the parties that Plaintiff shall recover the additional amount of $1,562.05; and it is further

240

ORDERED that this case be dismissed and stricken from the docket of this Court.

| June 6, 1996 | WALLY EDGELL, Ph.D. |
|---|---|
| Date | Clerk |

/s/ Sue O. Abraham

(By) Deputy Clerk

*EXHIBIT C*

ORIGINAL
U.S. DISTRICT COURT
FILED AT WHEELING, WV
MAR 14 1995
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

INTERSTATE PETROLEUM CORPORATION
P.O. Box 4006
N. 27th and Vance Avenue
Wheeling, WV 26003

    v.                        Case No.    5:95-CV-2

ROBERT C. MORGAN and
VICKIE L. MORGAN, d/b/a
GREEN ACRES GAS AND GROCERY
U.S. 250 and S.R. 7
P.O. Box 940
Hundred, WV 26575

### ANSWER TO COMPLAINT

Comes now the Defendant, Robert C. Morgan and Vickie L. Morgan, d/b/a Green Acres Gas and Grocery, by and through its counsel Geary M. Battistelli, and without waiving the fact that the Plaintiff has failed to complete service of process upon the Defendant, does hereby answer the Plaintiff's complaint in this matter.

1. Defendant admits the allegations contained in paragraph one of the Complaint.

2. Defendant admits the allegations contained in paragraph two of the Complaint.

3. Defendant admits the allegations contained in paragraph three of the Complaint.

4.  Defendant admits the allegations contained in paragraph four of the Complaint.

5.  Defendant admits the allegations contained in paragraph five of the Complaint.

6.  Defendant admits the allegations contained in paragraph six of the Complaint.

7.  Defendant admits in part and denies in part the allegations contained in paragraph seven of the Complaint.

8.  Defendant denies the allegations contained in paragraph eight of the Complaint.

9.  Defendant denies the allegations contained in paragraph nine of the Complaint.

10.  Defendant denies the allegations contained in paragraph ten of the Complaint to the extent specified above.

11.  Defendant denies the allegations contained in paragraph eleven of the Complaint.

12.  Defendant denies the allegations contained in paragraph twelve of the Complaint.

13.  Defendant denies the allegations contained in paragraph thirteen of the Complaint.

14.  Defendant denies the allegations contained in paragraph fourteen of the Complaint.

15.  Defendant denies the allegations contained in paragraph fifteen of the Complaint.

16.  Defendant denies the allegations contained in paragraph sixteen of the Complaint.

17. Defendant admits in part and denies in part the allegations in paragraph seventeen of the Complaint.

18. Defendant admits in part and denies in part the allegations in paragraph eighteen of the Complaint.

19. Defendant admits in part and denies in part the allegations in paragraph nineteen of the Complaint.

20. Defendant admits in part and denies in part the allegations contained in paragraph twenty of the Complaint.

21. Defendant admits in part and denies in part the allegations contained in paragraph twenty-one of the Complaint.

22. Defendant denies the allegations contained in paragraph twenty-two of the Complaint.

23. Defendant denies the allegations contained in paragraph twenty-three of the Complaint.

24. Defendant denies the allegations contained in paragraph twenty-four of the Complaint to the extent as specified above.

25. Defendant denies the allegations contained in paragraph twenty-five of the Complaint.

26. Defendant denies the allegations contained in paragraph twenty-six of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

The Plaintiffs have failed to complete service of process upon the Defendant.

## SECOND AFFIRMATIVE DEFENSE

This court lacks federal subject matter jurisdiction over the Plaintiffs action.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiff have failed to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff has itself engaged in breaches of the original contract between the parties and the amended contract and mutual termination agreement.

## FIFTH AFFIRMATIVE DEFENSE

The mutual termination agreement between the parties is void because the Plaintiff engaged in an anticipatory breach of said agreement and the Plaintiff had no intention of living up to the terms and conditions of the mutual termination agreement.

WHEREFORE, Defendant respectfully requests that this court dismiss the Complaint in this matter; that the Defendant be awarded all reasonable attorney fees incurred in the defense of this matter, plus all court costs, plus whatever other relief the court may deem just.

ROBERT C. MORGAN and
VICKIE L. MORGAN, d/b/a
GREEN ACRES GAS and
GROCERY, DEFENDANT

/s/Geary M. Battistelli
Of Counsel

GEARY M. BATTISTELLI, ESQUIRE
708 Central Union Building
Wheeling, West Virginia 26003
232-4980

*EXHIBIT D*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

INTERSTATE PETROLEUM CORPORATION,

     Plaintiff,

v.                             Civil Action No. 5:95CV2
                                         (STAMP)

ROBERT C. MORGAN and VICKIE L. MORGAN,
d/b/a GREEN ACRES GAS & GROCERY,

     Defendants.

### *FINAL CIVIL JURY INSTRUCTIONS*

Now that you have heard all of the evidence and the closing statements by the lawyers, it is my job as judge to tell you about the laws that apply to this case. As jurors, you have two jobs: First, you must determine from the evidence what the facts of this case are. Then you must apply the rules of law that I will give you to those facts in order to determine whether the defendants, Robert Morgan and Vickie Morgan, are liable to the plaintiff, Interstate Petroleum Corporation, and if so what damages, if any, Interstate Petroleum is entitled to recover.

I will permit you to take these instructions with you to the jury room. However, you must not single out one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what you believe the law ought to be, it would be a violation of your sworn duty as a juror to base your verdict upon any view of the law other than that given in the instructions; just as you realize it would be a violation of your sworn duty, as judges of the facts of this case, to base your verdict upon anything but the evidence in the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the

same evidence presented to all of the jurors; and to arrive at a verdict by applying the same rules of law, as given in the Court's instructions.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the complaint of the plaintiff and the answer thereto of the defendants. You must perform your duty without any bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court's instructions, and then reach a just verdict, regardless of the consequences.

At the pame time, the case before you must be decided by you as an action between persons of equal standing and worth in the community. By that, I mean that a corporation such as Interstate Petroleum Corporation is entitled to the same fair trial in your hands as a private individual. All persons, including corporations or partnerships, stand equal before the law and are to be dealt with as equal in a court of justice.

## A. Burden of Proof

The burden is on the plaintiff asserting a claim in a civil action, such as this, to prove every essential element of its claim by a preponderance of the evidence. So, if the proof should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence in the case, or if the proof is evenly balanced, then the plaintiff has failed in establishing its burden of proof and you must find for the defendants.

To establish by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true. Although the burden is on the party who asserts the affirmative of an issue to prove that claim by a preponderance of the evidence in the case, this rule does not, of

course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence in this case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

The burden is on plaintiff Interstate Petroleum to prove every essential element of its claim by a preponderance of the evidence. This means that Interstate Petroleum must prove the existence of a contract, that the Morgans breached certain terms or provisions of that contract or a single term or provision thereof, that Interstate Petroleum was damaged by such breach, and the amount of damage resulting from such breach.

## B. *Definition of Contract*

A contract is an agreement between two or more persons to do or not to do a particular thing. It gives rise to an obligation or legal duty, enforceable in an action at law. A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.

Unambiguous written contracts are presumed to express the entire and exact meaning of the parties and every part of their agreement. The language of a contract must be accorded its plain meaning, and such language must be given full effect.

## C. *Breach of Contract*

You must first determine whether defendants Morgan breached the contract of sale with Interstate Petroleum before awarding any damages. The party claiming a breach of contract must prove by a preponderance of the evidence that the other party has breached a certain term or provision of that contract. If you find by a preponderance of the evidence that the Morgans materially breached the contract, then you must find in favor of Interstate Petroleum. However, if you find

by a preponderance of the evidence and under these instructions that the Morgans did not materially breach any such contract, then you must find for the Morgans as to that claim.

In this case, you have heard that the plaintiff Interstate Petroleum terminated the contract of sale. In order for you to find that Interstate Petroleum was entitled to terminate the contract, you must find that the defendants Morgan materially breached the contract.

A material breach occurs when a party, without just cause, fails or refuses to perform its portion of the agreement, even though the other party has performed or is willing to perform its obligations under the contract.

The following circumstances should be considered in determining whether the breach is "material":

1. The extent to which the breach will deprive the plaintiff of the benefit which it reasonably expected;

2. The extent to which the plaintiff can be adequately compensated for the part of the benefit of which it has been deprived due to the breach;

3. The extent to which the defendants will suffer forfeiture as a result of the breach;

4. The likelihood that the defendants could have and would have cured the breach; and

5. The extent to which the defendants' behavior in breaching the contract comports with standards of good faith and fair dealing.

The purpose of any contract is to secure the parties' expectation of an exchange of performances. An important circumstance in determining whether a breach is material is the extent to which the injured party will be deprived of the benefit which it reasonably expected from the exchange.

If you determine that the Morgans' failure to provide a letter of credit by January 4, 1995 was a material breach of the parties' contract, you must find that Interstate Petroleum was entitled to terminate the contract, and you must enter a verdict for Interstate Petroleum. In determining whether the failure of the Morgans to obtain a letter of credit was a breach of contract, you can consider whether Interstate Petroleum played a part in the inability of the Morgans to procure a letter of credit such as underestimating the construction costs and the gallonage to be sold.

If you find that "time was of the essence" in the performance of the parties' contract, and that the Morgans delayed in the performance of the contract beyond the period specified in the contract, you must find that this is a material breach and that Interstate Petroleum was entitled to terminate the contract, and you must enter a verdict for Interstate Petroleum, unless you find that Interstate Petroleum caused the delay in performance or waived the time period in which the Morgans had to perform the contract. Whether time is of the essence of a contract is determined from the language used in the instrument and the circumstances surrounding, and the principal object is to determine the intention of the parties.

Paragraph 11 on page 4 of the contract provides that if there is a delay or failure of performance by either party that such failure of performance or delay in performance shall not constitute default under the contract if such failure or delay in performance was beyond the control of the party. However, in order for this provision to apply, there must be prompt written notice of such delay or failure to perform by defendants Morgan to plaintiff Interstate Petroleum. Therefore, you must find for the Morgans if you believe that the Morgans exercised due diligence in pursuing a letter of credit with a bank as required by the contract, but that because of the additional construction costs and sales below projection caused by the plaintiff, they were unable to procure a letter of credit and that written notice of the same was given. This, coupled with the payment for all products via electronic transfer before delivery of the products by the plaintiff to the defendants, would not constitute a breach of contract.

A party to a contract which alleges, as the Morgans have in this case, that they are unable to perform a requirement of their contract,

is nevertheless, not excused from their contractual obligation if the party claiming such an inability solely placed themselves in a position which made their performance under the contract difficult or impossible. Accordingly, if you find that the defendants in this case, Robert and Vickie Morgan, solely placed themselves in a position which made it difficult or impossible for them to obtain a letter of credit as required by the contract, they are nevertheless liable to Interstate Petroleum for the damages which you find were incurred by Interstate Petroleum as a result of the breach of the contract.

## D.  *Damages*

If you find by a preponderance of the evidence that the Morgans materially breached the contract, then you must determine the amount of damages to which Interstate Petroleum is entitled. Plaintiff Interstate Petroleum bears the burden of proving any and all damages it claims to have sustained by a preponderance of the evidence. Your award must be based upon the facts in this case and must not be based upon sympathy, conjecture, speculation or guesswork. Similarly, your verdict should not be inspired by prejudice against any party.

The claims of Interstate Petroleum are premised on breach of contract. Therefore, Interstate Petroleum may recover only those damages as may fairly and reasonably be considered as arising naturally that is, according to the usual course of things from the alleged breach of the contract itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time they made the contract. In other words, the damages claimed by Interstate Petroleum must have been proximately caused by the breach. If you decide that plaintiff Interstate Petroleum is entitled to damages, it is your duty to determine the amount of money which reasonably, fairly and adequately compensates Interstate Petroleum for injuries as are the direct, natural and proximate result of the breach of contract; that is, to put Interstate Petroleum as the nonbreaching party, in as good a position as that party would have been if the promised performance had been rendered.

Damages that are remote, conjectural or speculative cannot be recovered and in order to sustain a recovery for damages, there must

be proof that furnishes reasonable certainty of damages and the amount of those damages.

Where economic loss is alleged to have occurred, it is incumbent upon the party claiming such loss to produce evidence that will take that element beyond the realm of surmise and conjecture. Any evidence of economic loss must be proved to a reasonable degree of certainty.

To recover consequential damages arising from a breach of a contract, the injured party must show that at the time the contract was made the parties could reasonably have anticipated that these damages would be the probable result of a breach.

Damages are ordinarily based upon the injured parties' expectation interest and are intended to give them the benefit of the bargain by awarding a sum of money that will, to the extent possible, put them in as good a position as they would have been had the contract been performed. Stated another way, the measure of damages is the actual loss sustained by reason of the breach which includes the loss of the profits which Interstate Petroleum would have received if the contract had been performed, less any proper deductions.

You are never to presume damages.

When one sustains a damage because of an alleged breach of contract then that person must act in a reasonable way to mitigate these damages.

Interstate Petroleum makes the following claims for damages. First, plaintiff Interstate Petroleum maintains that it is entitled to recover as consequential damages from the breach of the contract of sale damages which have been proven by a preponderance of the evidence to have been sustained by plaintiff Interstate Petroleum Corporation in the form of loss of profits and costs incurred by plaintiff Interstate Petroleum to obtain the "BP" brand for the Morgans including costs to obtain trademark approval, costs to conduct market surveys, costs to prepare bank loan requests, costs of design work, costs of assisting the Morgans with construction requirements and analysis of construc-

tion quotations, costs of acquiring equipment for the Morgans' dealership, costs of complying with branding requirements, and costs of sign installation. Second, plaintiff Interstate Petroleum contends that it is entitled to recover as damages those costs reasonably incurred due to defendants' breach of the contract of sale including the accounts receivable balance and "debranding costs." If you find that the plaintiff Interstate Petroleum has proven any or all of the above claimed damages by a preponderance of the evidence and to a reasonable certainty, then you may award such damages to plaintiff Interstate Petroleum for the breach by the Morgans of its contract of sale.

The parties have stipulated that plaintiff Interstate Petroleum is entitled to recover from defendants (1) the accounts receivable balance covering credit card processing fees, and charge backs amounting to $770.59 and (2) the note receivable balance less the credit card payables, amounting to $791.46. Therefore, you should not consider those amounts in determining any damages.

Any loss of profits to Interstate Petroleum for future business must be determined based on a reasonable certainty of the profits being generated by the plaintiff. You may consider the events in paragraph 23 of the contract of sale dealing with termination in determining whether loss of profits asked by the plaintiff are speculative.

If you do not consider loss of future profits as being speculative, then loss of profits for future years may be determined. Loss of profits for future years must be discounted to present dollars.

This Court has made a determination as a matter of law regarding the claims of the plaintiff Interstate Petroleum for attorney's fees and court bond premiums paid by plaintiff Interstate Petroleum and therefore you shall not consider those matters in your determination of damages, if any.

The mere fact that I have given you these instructions on the law of the recoverability of damages does not imply or suggest that the Court believes that any damages are due. Whether or not damages are due is for you to decide. Instructions as to the measure of damages are only given for your guidance, in the event that you should find in

favor of the plaintiff, Interstate Petroleum Corporation, from a preponderance of the evidence in the case.

## E. *General Instructions*

As I've previously told you at the start of this trial, there are, generally speaking, two types of evidence from which you the jury may properly find the truth as to the facts of the case. One is direct evidence such as the testimony of an eye witness. The other is indirect or circumstantial evidence proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all of the evidence in the case, both direct and circumstantial.

Statements and arguments of counsel are not evidence in the case. While counsel may during closing argument state his opinion as to what amount the verdict should be, you are instructed that any dollar figures mentioned by counsel do not constitute evidence but merely represent argument which the jury may disregard in its deliberations.

When, however, counsel on both sides stipulate or agree to the existence of a fact, or when the Court brings to your attention that certain facts are uncontroverted or undisputed, including admissions in the pleadings, then the jury must, unless otherwise instructed, regard those facts as proven. In such instances, any fact or facts agreed to or stipulated are to be accepted by you as true and as proven, and additional proof is not necessary to establish such fact or facts.

Unless you are otherwise instructed, the evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; all facts which may have been admitted or stipulated; and all facts which have been brought to your attention as facts that are uncontroverted and undisputed; and all applicable presumptions dtated in these instructions.

You have heard expert witness testimony or evidence in this case from Edward Coyne, Jr. An expert witness is allowed to express his opinion on those matters about which he has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, his opinions, his reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept this witness' testimony merely because he is an expert. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

Any evidence to which an objection was sustained by the Court during the course of trial, and any evidence ordered stricken by the Court, must be entirely disregarded by you in your deliberations.

Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded by you.

You are to consider only the evidence in the case, but in your consideration of the evidence, you are not limited to the mere statements of the witnesses. In other words, you are not limited solely to what you have seen and heard the witnesses testify to. You are permitted to draw, from the facts which you find have been proved, such reasonable inferences as seem justified in the light of your experience.

An inference is a deduction or conclusion which reason and common sense lead the jury to draw from the facts which have been established from the evidence in the case.

A presumption is a deduction or conclusion which the law requires the jury to make under certain circumstances, in the absence of evidence in the case which leads the jury to a different or contrary conclusion.

You, as jurors in this case, are the sole judges of the credibility of the witnesses, and the weight and value their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony of the witness.

You should carefully scrutinize all of the testimony given, the circumstances under which each witness testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider each witness' ability to observe the matters to which the witness has testified, and whether each witness impresses you as having an accurate recollection of these matters. Consider also any relation the witness may bear to either side of the case. Consider the manner in which each witness might be affected by the verdict, if at all, and the extent to which, if at all, the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you as jurors to discredit the witness' testimony. Two or more persons witnessing an incident or transaction may see it or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance, or an unimportant detail, and whether the discrepancy results from innocent error or from intentional falsehood.

A witness, whether or not a party, may be discredited or impeached by contradictory evidence; or by evidence that at other times the witness may have made statements which are inconsistent with the witness' testimony.

If you believe a witness has been impeached or if a witness has been shown to have knowingly testified falsely concerning any material matter, you have a right to distrust such witness' testimony in all other particulars; and you may reject all the testimony of that witness or give it just such credibility as you may think it deserves.

After making your own judgment, you will then give the testimony of each witness in this case just such weight, if any, you think it deserves.

No statement or ruling which I have made during this trial was intended to indicate my opinion as to how you should decide the case or to influence you in any way in your determination of the facts.

Some of you have taken notes during the trial. If you chose not to take notes, remember it is your own individual responsibility to recollect the evidence. You should not rely on the notes of others to determine the facts in this case. We depend upon the judgment of all members of the jury; you must all remember the evidence in this case.

You have noticed that we do have an official court reporter making a record of the trial. However, as I mentioned earlier, we will not have typewritten transcripts of this record available for use in reaching your decision in this case.

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. You must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges; judges of the facts of this case. Your sole interest in serving as jurors in this case is to seek the truth from the evidence in the case.

Upon retiring to the jury room, select one of your number to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson in Court.

You will take the verdict form prepared for you to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson complete the appropriate form stating the verdict upon which you unanimously agree. The foreperson will then sign and date the form and the jury will then return with your verdict to the courtroom.

A form of verdict has been prepared for your convenience. [*Review verdict form.*]

If you should desire to communicate with the Court at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

*EXHIBIT E*

U.S. DISTRICT COURT
FILED AT WHEELING, WV
MAY 31 1996
NORTHERN DISTRICT OF WV

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

INTERSTATE PETROLEUM CORPORATION,
      Plaintiff,

v.                                     Civil Action No. 5:95CV2
                                            (STAMP)

ROBERT C. MORGAN and VICKIE L. MORGAN,
d/b/a GREEN ACRES GAS & GROCERY,
      Defendants.

### *SPECIAL VERDICT*

1.  Do you find that Robert C. Morgan and Vickie L. Morgan, d/b/a Green Acres Gas & Grocery, breached the Contract of Sale dated April 29, 1993 or the Termination Agreement dated December 12, 1994?

        Yes __✓__       No ____

[If your answer is "no," you should not answer any further questions but your foreperson should sign and date the verdict form and you should return to the courtroom.]

2.  Do you find that the Morgans' breach of the Contract of Sale or the Termination Agreement caused damages to Interstate Petroleum Corporation?

        Yes __✓__       No ____

[If you answered "yes," you should answer the following questions and enter a verdict in a monetary amount in favor of Interstate Petroleum Corporation.]

3. What is the total amount of damages which you find will fairly compensate Interstate Petroleum so that Interstate Petroleum is in the same position as it would have been if the Morgans had fulfilled their obligations under the contract?

$ __42,901.50__

4. Of the total amount of damages you have set forth in your answer to Question No. 3, please set forth below the amounts of damages attributable to the following categories:

(1) Loss of profits      $ __40,500_____

(2) Costs due to breach
of contract      $ __2,401.50_____

__5-31-96__              _____/s/_____
Date            Foreperson